82 N.J. Super. 399 (1964)
197 A.2d 715
IN THE MATTER OF THE GENERAL ASSIGNMENT FOR THE BENEFIT OF CREDITORS OF: HIAWATHA DO IT YOURSELF, INC. (A CORPORATION OF THE STATE OF NEW JERSEY), ASSIGNOR, TO MYRON S. LEHMAN, ASSIGNEE.
Superior Court of New Jersey, Morris County Court, Probate Division.
Decided February 7, 1964.
*401 Messrs. Kleinberg, Moroney & Masterson for the assignee (Mr. Sheldon Schachter appearing).
Messrs. Egan, O'Donnell, Hanley & Clifford for the judgment creditors (Mr. Charles M. Egan appearing).
Mr. David M. Satz, Jr., United States Attorney, for the United States of America (Mr. Nathan Edgar Finkel appearing).
LONG, J.C.C.
This matter arises from a general assignment for the benefit of creditors and involves the question of priorities as between (1) two judgment creditors who caused levies to be made on the debtor's property prior to the assignment, and (2) a tax claim of the United States of America on which a notice was filed in the Morris County Clerk's Office before the assignment but after the levies by the judgment creditors.
On July 11, 1961 the creditor Whitlock Corporation obtained a judgment in the Morris County District Court *402 against Hiawatha Do It Yourself, Inc., in the sum of $901.65 plus costs. On July 14, 1961 execution was issued, and on July 17, 1961 the sergeant-at-arms effected a levy on the assets of the debtor at its place of business.
On August 2, 1961 the creditor Anchor Sales Corporation obtained a judgment in the Morris County District Court against the debtor for $201.60 plus costs. On the same day execution was issued, and on August 3, 1961 the sergeant-at-arms effected a levy on the assets of the debtor at its place of business.
At the direction of the attorney for the judgment creditors, the sergeant-at-arms did not proceed to sale under the executions, but left the assets levied on in the custody of the debtor and it was permitted to continue in business, which necessarily included the selling of some of the stock in trade which was on hand at the time of the levies and, possibly, the replacement of some of the stock sold.
On September 6, 1961 notice of tax claim of the United States was recorded in the Morris County Clerk's Office.
The matter apparently continued in this situation until February 24, 1962, when the debtor made an assignment of its entire estate for the benefit of creditors to Myron S. Lehman as assignee. Following the assignment the attorney for the judgment creditors advised the assignee of the judgments and the levies thereunder and advised that he claimed priority as against the assignee and the rights of any other claimants. The assignee agreed that if the judgment creditors would withhold taking action on the liens which they claimed, he would convert the assets of the estate into cash by public sale and would thereafter bring the matter before the court for a determination as to the priorities. Accordingly, and in reliance thereon, the attorney for the judgment creditors took no further action with respect to the judgments and levies.
The assignee took possession of the physical assets of the debtor, and on March 15, 1962 the assets were sold at public sale for a total sum of $2,413.43. On March 23, 1962 an *403 order was entered confirming the sale, and the proceeds of sale were promptly received by the assignee.
There the matter rested until July 19, 1963, when the assignee filed his final account. The claim of the United States is listed as a priority claim in the amount of $2,042.72. The account shows total reecipts of $2,584.80 and a balance on hand of $1,957.56. Apparently the assignee by inadvertence overlooked his understanding with the attorney for the judgment creditors and filed his final account without either listing the judgment creditors as parties in interest or asking for an adjudication as to their claimed priorities. Upon discovery of this, the judgment creditors filed a notice of motion for a determination as to their priorities. No objection was made to the procedure and the matter was argued as between the judgment creditors and the claim of the United States. The assignee took no position.
Although the judgment creditors did not file a formal proof of claim and were not noticed as parties in interest, it appears that the present motion is an appropriate method for bringing the matter before the court, and since there is no objection, the matter will be disposed of on the motion.
Since the validity and effect of the levies is in question the court deemed it necessary that inquiry be made as to the nature of the levies and the property levied on. The records of the district court disclose that on the judgment of the Whitlock Corporation a return was made to the clerk that levy was effected on July 17, 1961, and on the judgment of Anchor Sales Corporation return was made to the clerk that levy was effected on August 3, 1961. Records of the sergeant-at-arms indicate that on both levies he levied on the following:
1 paint mixing machine
1 counter
1 cash register
1 adjustable large wood cutting table saw
Paints, hardware, lumber, tools, electric and plumbing fittings and supplies, nails, screws, and all other goods and chattels used in the operation of the said business.
*404 On the facts as stated, what is the status of the judgment creditors? Under New Jersey law the lien of a judgment becomes effective upon the making of a levy by the executing officer, but dates back to the delivery of the writ to him. Vineland Savings and Loan Ass'n v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1950). If the levies made in this case were valid and effective, and remained so, the two executing creditors had judgment liens at the time of the assignment for benefit of creditors on February 24, 1962. As to the assignee, he is the successor to the assignor and acquires the property subject to rights and equities which have already attached. Van Waggoner v. Moses, 26 N.J.L. 570 (E. & A. 1857).
With respect to the position of the United States, it is granted a priority by 31 U.S.C.A. § 191. The tax obligation of the assignor is a debt entitled to the priority. However, the tax is not a valid lien as against any judgment creditor until the required notice is filed. N.J.S.A. 46:16-13; 26 U.S.C.A. § 6323. The priority of the United States is subject to a pre-existing valid specific lien. First National Bank and Trust Co. v. MacGarvie, 22 N.J. 539 (1956); City of Richmond v. Bird, 249 U.S. 174, 39 S.Ct. 186, 63 L.Ed. 543 (1919); Regan v. Metropolitan Haulage Co., 127 N.J. Eq. 487 (Ch. 1940). The first in time is the first in right. United States v. City of New Britain, 347 U.S. 81, 85, 75 S.Ct. 367, 98 L.Ed. 520 (1954). However, to obtain such superiority, the pre-existing lien must, in the language of the federal cases, have been "perfected"  that is, have become choate. United States v. Scovill, 348 U.S. 218, 75 S.Ct. 244, 99 L.Ed. 271 (1955).
The question of whether the lien has been perfected is, for priority purposes, a question of federal law. United States v. Scovill, supra; United States v. Wadill, Holland and Flinn, 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1944). This does not mean that it can be determined only by a federal court. The case of United States v. Pioneer American Insurance Co., 374 U.S. 84, 83 S.Ct. 1651, 10 *405 L.Ed.2d 770 (1963), does not so hold, and state courts have regularly exercised their authority to determine in the first instance the question of priority in regard to federally-created liens.
The question is accordingly raised of whether the judgment creditors' liens were perfected within the meaning of the federal cases. The priority of a lien created by state law depends upon the time it attaches to the property and becomes choate. United States v. Pioneer American Insurance Co., supra. As appears from that case:
"The federal rule is that liens are `perfected in the sense that there is nothing more to be done to have a choate lien * * * when the identity of the lienor, the property subject to the lien, and the amount of the lien are established.'"
The fact that the debtor, following the levy, might have satisfied the judgment and thus have redeemed his chattels does not prevent the lien from being choate. United States v. Scovill, supra, was dealing with the statutory right of a tenant to retake its property after a distraint by giving a bond, not with the mere possibility that the judgment debtor might at some time satisfy the judgment before execution sale.
The levies here were made before notice of the federal lien was filed. At the time of the levies the identity of the lienors, the property subject to the liens (except for the matters hereinafter discussed), and the amounts of the liens were established. Consequently, at the time of the levies the two judgment liens had been perfected. However, after both levies the judgment debtor was permitted to remain in possession of the property levied on. It is settled in this State that the judgment creditor may, without losing his lien or his priority, direct the levying officer not to proceed to sale, provided that it is done in good faith. Caldwell v. Fifield, 24 N.J.L. 150, 155 (Sup. Ct. 1853); Cumberland Bank v. Hann, 19 N.J.L. 166 (Sup. Ct. 1842); Greene v. Sahlin, 67 N.J. Super. 592 (Ch. Div. 1961). Such conduct may *406 afford evidence of fraudulent intent, but is not necessarily fraudulent per se. Greene v. Sahlin, supra. Accordingly, the property remains in legal custody.
It would seem, however, that in the case at hand this rule would not apply to the stock in trade which is permitted to remain in the judgment dobtor's possession. Since the debtor is free to deal with the stock in trade, and the levy bind subsequently acquired property, the stock in trade is neither specific nor constant, and the property subject to the lien is not established. Illinois ex rel. Gordon v. Campbell, 329 U.S. 362, 375, 67 S.Ct. 340, 91 L.Ed. 348 (1946). There is therefore no perfected or choate lien on the stock in trade.
This does not affect the lien on the remainder of the property levied on. In Caldwell v. Fifield, supra, the court said:
"* * * If the plaintiff in execution may lawfully levy on a part of the defendant's property, as he clearly may, why may he not, having levied upon the whole, permit the debtor to sell or dispose of part of the property levied on without rendering the levy void as to the residue? * * *" (24 N.J.L., at p. 158)
It is concluded that within the rule of United States v. New Britain, supra, there are established in this case (1) the identity of the lienors, (2) the amounts of the liens, and (3) the property subject to the liens, i.e., the property levied on other than the stock in trade.
This being so, the judgment creditors had liens on the first four items listed on the inventory and levy at the time the federal notice was filed and at the time of the assignment for creditors. This would give them priority unless the lien was subsequently lost. In this connection the United States relies on N.J.S. 2A:18-27, which provides as follows:
"A writ of execution issued out of a county district court shall remain valid and effective for the purpose of a levy, and shall be operative and effective against any goods and chattels levied upon, for 1 year from the date of its issuance, unless sooner satisfied. Thereafter it shall be void. The officer shall make a return to the clerk of the proceedings had by him on such writ forthwith after a satisfaction thereof, otherwise within 1 year." (Emphasis added) *407 It is argued for the United States that since there was no sale by the levying officer, the writs and the levies thereunder became nullities one year after their issuance and are now entitled to no consideration whatsoever.
The time element becomes important. The writs of execution were issued on July 14, 1961 and August 2, 1961. The levies were made July 17, 1961 and August 3, 1961. Notice of the federal lien was filed September 6, 1961. The assignment for creditors was made February 24, 1962. The sale by the assignee was made March 15, 1962 and was confirmed March 23, 1962. All of these events took place before expiration of one year from the issuance of the executions. It has already been determined that the judgment creditors did not lose their lien by permitting the assets to remain in possession of the judgment debtor. Also, as against the assignee, the property remains subject to the liens which have previously attached. The assignee is the representative of all the creditors (N.J.S. 2A:19-14) and the agreement to permit him to sell the assets subject to a subsequent determination of the priority of the judgment creditors appears to be valid. It appears to have been for the benefit of the other creditors and there is no showing or suggestion of prejudice to them.
Pursuant to the agreement, the assignee sold the assets free from the lien of the judgment creditors on March 15, 1962. This was less than one year from the date of the executions and the levies were still valid to the extent heretofore stated. Thereafter the judgment creditors could not proceed to sale on their executions. In this situation the liens should be transferred to the money proceeds. Crane Iron Works v. Wilkes, 64 N.J.L. 193, 195 (Sup. Ct. 1900).
It is concluded that the rights of the judgment creditors became fixed not later than the date of confirmation of the sale on March 23, 1962. Thereafter they should not lose their rights by a failure to do something, i.e., proceed to execution sale, which they could not do by reason of a valid agreement with the assignee. The United States cannot accept the benefits of the agreement with the assignee, which made the proceeds *408 of sale a part of the estate in the hands of the assignee, without accepting the burdens. The assignee cannot free the estate from the liens by simply waiting. The effect of the liens should not depend upon whether the question of their validity is presented to a court within one year or whether the assignee presents his account within that time.
It is concluded that the liens did not terminate simply because of the expiration of one year from the date of issuance of the execution.
Accordingly, it is held that Whitlock Corporation, as a judgment creditor, takes first priority to the extent of its judgment and Anchor Sales Corporation takes second priority, both prior to the claim of the United States of America. The priority is limited, however, to the proceeds of sale of the first four items levied on by the sergeant-at-arms. The sale by the assignee was in lots, but it does not appear what part of the proceeds of sale is attributable to the items levied on. If the parties in interest are unable to reach agreement on this, a date will be assigned for the submission of proofs. Since some of the matters relied upon are the results of the court's investigation, proofs may also be submitted concerning the levies made by the sergeant-at-arms and on the issue of whether permitting the assets to remain in possession of the debtor was fraudulent and not in good faith.
Counsel should advise the court as to whether agreement can be reached or it is desired to take proofs.