BROWN STROBER BUILDING SUPPLY CORP., A NEW YORK CORPORATION, PLAINTIFF, v. FANNEW REALTY, INC., A NEW JERSEY CORPORATION, DEFENDANT, AND, NEWARK REDEVELOPMENT AND HOUSING AUTHORITY, A BODY CORPORATE AND POLITIC, DEFENDANT AND THIRD-PARTY COMPLAINANT, v. CARPET UNLIMITED, INC., ET AL., THIRD-PARTY DEFENDANT.

Superior Court of New Jersey
Chancery Division Essex County

Decided February 28, 1980.

492

*Levin & Chenkin,* attorneys for plaintiff, Brown Strober Building Supply Corp.

*Herbert J. Silver,* attorney for third-party defendant and cross-claimant, Carpet Unlimited, Inc.

*Emil W. Nardachone,* attorney for defendant, counterclaimant, cross-claimant and third-party complainant Newark Redevelopment and Housing Authority (*Richard C. Lawten,* on the brief).

DWYER, J. S. C.

Plaintiff Brown Strober Building Corp., a New York corporation (Brown), instituted this action to enforce its alleged lien claim under the Municipal Mechanics' Lien Law, *N.J.S.A.* 2A:44–125 *et seq.* (Municipal Law) against Newark Redevelopment and Housing Authority (Authority) and to collect amounts allegedly due on a book account against Fannew Realty, Inc. (Fannew), for materials sold to and used in buildings built by Fannew under a turnkey project contract with the Authority.

Default was entered against Fannew for failure to answer. The Authority has filed an answer denying that Brown has a lien under the Municipal Law on the ground that the statute is not applicable. The Authority admitted that it held: (i) $95,428.00, representing 2½% of the purchase price for land and certain completed low-income housing units under terms of the contract which permitted withholding that percentage to guaranty full performance by Fannew; (ii) $18,920.00, representing monies withheld at final closing to cover punch list items, and (iii) $13,975.00, representing the amount deducted at closing for items allegedly not furnished by, or for work not completed by, Fannew. The Authority filed a third-party complaint to interplead numerous other entities allegedly asserting claims against it. Some of these third-party defendants have filed Municipal Law notices. Others have filed notices of intention under the Mechanics' Lien Law, *N.J.S.A.* 2A:44–64 *et seq.* (Mechanics' Lien Law), against the real estate in question prior to conveyance by Fannew to the Authority. Still others have made oral demands

for payment on the Authority. Finally, two have obtained judgments against Fannew and are represented by the Authority to be seeking execution on said judgments against the monies held by the Authority. Seven claimants have filed answers disputing the Authority's contentions that the Municipal Law does not apply. No party disputed the Authority's effort to proceed by interpleader.

The parties indicated that there were no disputed issues of fact. The court requested supplemental briefs on the applicability of the Municipal Law since there was no reported decision in New Jersey on that question.

The court directed that the Authority hold the funds in question until the court decided the applicability of the Municipal Law to avoid the question of unnecessary payment of legal fees and costs, if interpleader was not the proper remedy. *See Gazdayka v. Gernat*, 128 *N.J.Eq.* 432, 436 (Ch.1940).

The court will set forth the facts which are undisputed, determine whether the Municipal Law is applicable, and determine whether interpleader is appropriate.

In September 1977 the Authority entered into a written contract with Fannew under which it sold certain lands to Fannew. It further agreed to purchase 104 units of low-cost housing and the same lands from Fannew when the units were "suitable for occupancy." The Authority entered into the agreement pursuant to the Federal Government's turnkey program. See 24 *C.F.R.* 841.20; *Lehigh Constr. Co. v. Orange Housing Auth.*, 56 *N.J.* 447 (1970). In that case the Supreme Court outlined the general background of the turnkey program and held that the New Jersey statutes for competitive bidding did not apply to the awarding of a contract for the acquisition of a completed project under such a program.

■ In summary, the agreement between the Authority and Fannew provided:

(1) in Article I, the improvements to be made were to comply with applicable laws and codes; the seller (Fannew) was responsible for curing all defects which appeared within one year and the purchaser (Authority) had the right to retain 2½% of the purchase price for one year without interest as a guarantee that such

defects would be cured, or the funds were to be used to effect the repairs within that time, and either the funds, or the remaining balance, were to be paid over to Fannew;

(2) in Article III, "[t]he Property suitable for occupancy shall be conveyed to the purchasers. . . .";

(3) in Article V,

Seller warrants that the Property will be conveyed free and clear from all liens and encumbrances, except those specifically excepted or reserved in Exhibit "B", and that title is to be good of record and in fact, and [sic] merchantable. . . . [P]rovided, however, that the Seller shall not be obligated to deliver a title in a better state than that conveyed to it;

(4) in Article VI, the risk of loss or damage was placed with the seller until delivery of the deed of conveyance to purchase, and

(5) in Article VII, for the terms of settlement, and "[t]he Seller shall execute and deliver a good and sufficient Bargain and Sale deed with covenant against grantor for the Property," and the purchaser could pay amounts due on encumbrances for items such as taxes and water charges and deduct such amounts from the purchase price.

The contract also provided that upon completion of certain sections, conveyance could be made of a completed section. In fact, three conveyances were made, on August 4, 1978, October 18, 1978 and November 17, 1978.

In connection with the first conveyance the Authority obtained a title search. This was updated prior to each subsequent closing. At the settlement for each conveyance any exceptions listed on the title report were either resolved before the relevant settlement or the Authority withheld funds. The Authority paid the withheld funds to subcontractors of Fannew who held mechanics' liens under the Mechanics' Lien Law or the mortgagee of Fannew. In an affidavit the Authority states that at no time prior to the closing for the third and final stage did any of the claims referred to in its answer and counterclaim appear in the reports of title relied upon by the Authority in making payment.

Those urging that the Municipal Law applies base that contention on the provisions of *N.J.S.A.* 2A:44–128. There is no question that a housing authority is a "public agency" within the meaning of *N.J.S.A.* 2A:44–126 and housing projects are "public improvements" within the meaning of the Municipal Law. *Id.*; *see Furlong v. Newark Housing Auth.*, 132 *N.J.Eq.* 341, 342 (Ch.1942).

*N.J.S.A.* 2A:44–128, in relevant part, provides:

Any person who, as laborer, mechanic, materialman, merchant or trader, or subcontractor, in pursuance of or conformity with the terms of any contract for any public improvement made between any person and a public agency as defined in section 2A:44–126 of this title and authorized by law to make contracts for the making of public improvements, performs any labor or furnishes any materials, including the furnishing of oil, gasoline or lubricants and vehicle use, toward the performance or completion of any such contract, shall, on complying with the provisions of sections 2A:44–132 and 2A:44–133 of this title, have a lien for the value of the labor or materials, or both, upon the moneys due or to grow under the contract and in the control of the public agency, to the full value of the claim or demand. . . .

They point out that their group did supply labor or material to Fannew for this public improvement; that the Authority acquired the public improvement before the first claim was filed under the Municipal Law in November 1978, and that the Authority is holding money due Fannew. They further urge that the statute does not specify that the contract between the public agency and the contractor must be one for construction. They also urge that the Authority is using public monies to pay for the contract. Finally, they urge that the relevant records in court show Fannew is a shell corporation without assets and that they cannot recover against H.U.D. *See Housing Corp. of America v. United States,* 468 *F.*2d 922, 199 *Ct.Cl.* 705 (Ct.Cl. 1972) (contractor had no relation with H.U.D. based on privity or third-party beneficiary; hence, H.U.D. not liable to contractor).

The Authority urges that its turnkey contract with Fannew is one of purchase of a completed structure. It asserts that under the relevant statutes the subcontractors are considered to be subrogated to the rights of the contractor for work done. In *Johnson v. Fred L. Emmons, Inc.,* 115 *N.J.Eq.* 335 (Ch.1934), aff'd o.b. 119 *N.J.Eq.* 88 (E. & A.1935), the court, in applying the predecessor of *N.J.S.A.* 2A:44–128 to determine what claims had to be honored, said:

The legislative purpose was essentially to subrogate the laborers and materialmen who had acquired rights against the contractor (rights to payments from him), to the rights which the contractor had acquired against the municipality it was to give those laborers and materialmen the right and the power to see to it that the moneys which the municipality became obligated to pay to the contractor (or so much thereof as was necessary) should actually go to the payment of the work and materials which went into the building. But there is *nothing* expressed in, or to be implied from, the provisions of the statute which indicates any intent to give to the laborers or materialmen any rights against the

municipality in or to any moneys to which the contractor never became entitled as against the municipality. [115 *N.J.Eq.* at 338–339]

*N.J.S.A.* 2A:44–126 provides:

"Subcontractor" means a person having a contract under a contractor for the performance of the same work, or any specified part thereof, and also a person having such a contract with a subcontractor, for the performance of the same work or any specified part thereof.

Further, when the Municipal Law is read in conjunction with the other statutes intended to give security to subcontractors, *N.J.S.A.* 2A:44–143, the Bond Act, and *N.J.S.A.* 2A:44–147 (should be *N.J.S.A.* 2A:44–148), the Trust Fund Act, there appears to be a legislative intent that the laws apply to construction projects. *See Wilson v. Robert A. Stretch, Inc.,* 44 *N.J.Super.* 52, 54 (Ch.Div.1957).

The Authority therefore concludes that since it had a contract to acquire and did not have a typical public agency/owners contract to build, the Municipal Law does not apply.

This court agrees with the Authority's position. But this court also concludes that there are two other reasons why the Municipal Law does not apply.

■ During the period of construction, Fannew held title to the real estate. The subcontractors under the Mechanics' Lien Law could, and some did, assert lien claims. To hold that they also have rights under the Municipal Law would give them rights under both statutes. Each of these statutes is in derogation of the common law and should normally be strictly construed. *See Wilson v. Robert A. Stretch, Inc., supra,* 44 *N.J.Super.* at 58. Such a holding would add complexity to a program that was intended to simplify governmental processes and lower the cost of housing. *Lehigh Constr. Co. v. Orange Housing Auth., supra.* Accordingly, this court concludes that the Municipal Law does not apply.

■ The court must next consider whether interpleader is an appropriate means of resolving the remaining problems. Pursuant to *R.*4:31, the Authority asserted its rights to interplead by counterclaim as to Brown, and by crossclaim as to Fannew. Under *R.*4:8–1, the Authority joined the then nonparty claim-

ants by third-party complaint so as to join all who were asserting claims to the fund it was holding.

Although *R*.4:31 does not expressly state what the practice should be in determining whether interpleader should be allowed, it is suggested in 2 *Schnitzer & Wildstein, New Jersey Rules Serv.*, A IV–1094, that normally the right of a party seeking interpleader should be determined before determining the rights of the claimants to the fund, but that the practice should be flexible as to whether that is done in one or more stages.

In this action, as to those claimants who asserted rights to the fund under the Municipal Law, the procedure has been to determine their rights as if the action were one for declaratory judgment, *N.J.S.A.* 2A:16–50 *et seq.* The court having determined that they have no claim under said law, the Authority has no exposure to them.

The court has been advised that the claims under the Mechanics' Lien Law have been resolved and hence no claims of that type expose the Authority to double liability or multiple suits. To the extent that there are any unresolved claims, the determination in this matter means that the Mechanics' Lien Law applies and such claims can be resolved under it.

There remains for resolution the determination of the amount which the Authority is entitled to withhold from Fannew. The assertion of a claim to part of the fund by the party seeking interpleader no longer defeats interpleader. See *R*.4:31; 2 *Schnitzer & Wildstein, New Jersey Rules Serv.*, A IV–1090. When that amount is determined, the Authority asserts that it is willing to pay the balance into court, be discharged, and let the other claimants litigate over the fund.

There are certain difficulties with the suggested procedure. The parties holding judgments against Fannew upon which levies have been made against the funds which are held by the Authority are entitled to have them satisfied from the amount found to be due from the Authority to Fannew after deducting the amount due the Authority. *See In re Hiawatha Do It Yourself, Inc.*, 82 *N.J.Super.* 399 (Cty.Ct.1964).

The failure of Fannew to enter an appearance poses a jurisdictional problem. Brown did serve Fannew by original process and thereafter had default entered against Fannew. Brown, therefore, may proceed to prove its claim as against Fannew. *R.*4:43–2. But the record reveals that many of the other parties to this action served their respective crossclaims against Fannew by service upon an attorney who was not the attorney of record for Fannew in this matter, for no appearance was ever filed on its behalf. The court, therefore, had no jurisdiction over Fannew in respect to such claims. *R.*1:5–1(a), and determination of such rights would not be binding upon Fannew.

The court, therefore, concludes that the Authority should not be ordered to deposit into court the amount in excess of its claim and the amount due upon the levies, and that interpleader is not appropriate.

■ If, as asserted by some of those who urged that the Municipal Law applied that Fannew is insolvent, then they should proceed under *N.J.S.A.* 14A:14–1 *et seq.* If the court permitted the matter to proceed as one for interpleader by permitting corrective service of process on Fannew, the amount of the fund would be depleted by costs and fees to the Authority and subsequent action under *N.J.S.A.* 14A:14–1 *et seq.* might make the proceedings useless.