**Rita M. DURHAM, Plaintiff,**

v.

**UNITED STATES of America, By the COMMISSIONER OF INTERNAL REVENUE, and National State Bank, Executor of the Estate of John Richard Durham, Defendants.**

**Civ. A. No. 81–156.**

United States District Court,
D. New Jersey.

Aug. 23, 1982.

William P. Westling, Westling, Lime & Welchman, Somerville, N. J., for plaintiff.

Glenn L. Archer, Jr., Asst. Atty. Gen., Tax Div. by D. Patrick Mullarkey, Chief Civil Trial Section, Northern Region, Washington, D. C., W. Hunt Dumont, U. S. Atty., Newark, N. J., for United States.

Barry Knopf, Cohn & Liflind, Saddle Brook, N. J., for defendant Nat. State Bank.

## OPINION

DEBEVOISE, District Judge.

Plaintiff, Rita M. Durham, instituted this action against the United States under 28 U.S.C. § 2410, seeking a judgment declaring that her claim to the assets of her deceased husband's estate is superior to the claim of the United States to those assets. The claim of the United States arises out of plaintiff's husband's unpaid taxes. In an amended complaint plaintiff joined The National State Bank, executor of her husband's estate. The United States moved for summary judgment. The Bank, in effect, seeks only an order directing the manner in which the assets should be distributed.

### The Facts

The facts are undisputed. On July 29, 1975 plaintiff was divorced from her husband, John Durham, pursuant to a decree entered in New Jersey Superior Court. The Superior Court awarded child custody and alimony to plaintiff but reserved decision on the question of equitable distribution of the marital estate. John Durham died testate on April 28, 1976, devising his residuary estate to an *inter vivos* trust executed between the decedent and The National State Bank. The Bank was also appointed executor of John Durham's estate.

On August 24, 1977 the Superior Court rendered its equitable distribution decision. The Court ordered that the estate pay plaintiff $75,000.00 as her share of the marital estate and directed the executor of the estate to liquidate so much of its assets as were necessary to pay that amount.

Subsequently plaintiff and the Bank each received a "Notice of Deficiency" from the Internal Revenue Service (IRS) dated April 14, 1978. According to the notice, John Durham owed income tax and penalties totalling $25,816.00 (plus interest) for the 1974 and 1975 tax years. After receipt of this notice, plaintiff states, "petitions were filed with the United States Tax Court" (Complaint, ¶ 6), which in December, 1979 assessed deficiencies (and other amounts

due) against the estate totalling $19,816.00 (plus interest). The Tax Court absolved plaintiff of liability for those deficiencies (Complaint, ¶ 7). The United States admits only that the Tax Court issued a decision absolving plaintiff from liability for any amounts due from the estate on the ground that she was an "innocent spouse" (United States' Answer, ¶ 6).

On August 20, 1979 plaintiff obtained a writ of execution based upon the Superior Court's August 19, 1977 order of equitable distribution. On October 11, 1979 plaintiff caused the writ and a notice of levy dated October 5, 1979 to be served (by the Union County Sheriff) upon the Bank. Plaintiff thereby levied upon "all monies [held by the Bank] as Executor of the Estate of John Richard Durham, due or to become due to the Estate . . . ." The levy did not specify the amount of funds subject to the levy, but it did indicate that as of October 5, 1979 the estate owed to plaintiff "$88,190.88, including judgment, interest and Sheriff's fees". In a November 1, 1979 letter to plaintiff's attorney, however, the Union County Sheriff stated that although the levy had been served on the Bank on October 5, 1979, a bank officer informed him that the estate's account was subject to "a prior lien by the I.R.S. in the amount of $29,000.00".

On November 11, 1979 the IRS made an assessment of $11,400.05 against the estate of John Durham, for deficiencies determined to be due on the decedent's 1975 federal income taxes. On December 31, 1979 the IRS made a second assessment against the estate for $13,107.05 determined to be due on decedent's 1974 federal income taxes.

### Conclusions of Law

Although the United States asserts an interest in the Durham estate assets based on the decedent's federal tax deficiencies, the United States *does not* claim its purported priority through the provisions of the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323(a) ("FTLA"). In fact, the United States concedes

that Rita Durham's lien is entitled to priority over the liens of the U. S. pursuant to the provisions of Section 6323(a) of the Internal Revenue Code [26 U.S.C. § 6323(a)] by virtue of the fact that the U. S.'s unrecorded liens are not valid against a judgment lien creditor.

[United States' Brief, at 2–3.]

Rather, the United States asserts that "by virtue of Title 31 U.S.C. Section 191, the United States is entitled to priority to the assets of the Durham estate and [is] entitled to be paid before any other debts of the estate, including plaintiff's judgment lien". [United States' Brief, at 3.]

Section 191 provides:

§ 191. *Priority established*

Whenever any person indebted to the United States is insolvent, or whenever the estate of the deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed. The priority established under this section does not apply, however, in a case under title 11 of the United States Code.

■ Section 191 is clearly applicable here. First, the claims against the Durham estate total more than $100,000.00, far in excess of the estimated $49,000.00 presently held by the Bank in trust for the estate. Thus, the parties do not dispute that the estate's assets are "insufficient to pay all the debts due from the deceased". Second, it is unquestioned that the decedent's assessed income tax deficiencies are "debts" due to the United States from the estate. Therefore, the Government contends, Section 191 entitles it to have the tax debts paid first by the estate.

Plaintiff urges, however, that the FTLA created an exception to the priority in insolvency accorded the Government by Section 191. Plaintiff contends that in cases such as this, where the Government seeks to recover unpaid federal taxes, the provisions of the FTLA establishing lien priorities are plainly inconsistent with the provisions of Section 191 and thereby create an exception to Section 191 for federal tax debts.

At least two courts have explicitly held that the FTLA, by its "plain inconsistency" with Section 191, created an exception to the latter statute. *See City of Vermillion, S. D. v. Stan Houston Equipment Co.,* 341 F.Supp. 707 (D.S.D.1972), and *Talcott, Inc. v. Roto American Corp., et al.,* 123 N.J.Super. 183, 302 A.2d 147 (Ch.Div.1973) (adopting the *Vermillion* court's analysis). The *Vermillion* court's analysis, however, is sparse and sheds little light on the problem.[1]

In *Nesbitt v. United States,* 445 F.Supp. 824 (N.D.Cal.1978), *aff'd,* 622 F.2d 433 (9th Cir. 1980), *cert. denied,* 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981), a case with facts very similar to those in the present action, the parties raised the same issue, namely, whether the FTLA created an implied exception—for tax debt cases—to Section 191's federal priority in insolvency. In a scholarly and detailed opinion Judge Renfrew noted that he had carefully searched for but had found

> [n]othing in the legislative history of the FTLA indicat[ing] any congressional intent to override § 3466 [31 U.S.C. § 191]. In fact, there is some evidence to the contrary. [Specifically, the] American Bar Association ... had recommended that Congress amend § 3466 [§ 191] to coordinate the federal priority in insolvency with the [FTLA's lien priority provisions].

*Id.* at 829. Based on the lack of evidence of legislative intent to override Section 191 in tax cases, on Congress' failure to act on the subsequent ABA proposal to amend Section 191 in light of the FTLA, and, finally, on the somewhat distinct purposes of Section 191 and the FTLA, Judge Renfrew concluded that the FTLA *did not* create an exception to the operation of Section 191.

> It may very well be that '[t]he question of priorities is wholly or largely academic, unless the debtor is insolvent', but it does not follow from this that the FTLA is plainly inconsistent with § 3466 [31 U.S.C. § 191].
>
> •     •     •     •     •
>
> The Court is not unmindful of the many policy reasons why the government should not be entitled to priority under § 3466 [§ 191] when it is not entitled to priority under the FTLA. However persuasive these policy reasons may be, they do not convince the Court that the FTLA is plainly inconsistent with § 3466 [§ 191].

*Id.* at 830.

My own examination of both the legislative history of the FTLA and the various scholarly works concerning federal priority in insolvency cases leads me to conclude that Judge Renfrew was correct. The lien priority provisions of the FTLA did not create an exception to the operation of the United States' Section 191 priority.

This conclusion, however, does not end the inquiry. It is necessary to determine whether plaintiff's interest in the assets of her husband's estate was sufficiently perfected and specific that it might be excepted from Section 191's operation. *See Nesbitt v. United States, supra,* 622 F.2d at 433, 445 F.Supp. at 830–31. Although the Unit-

---

1. In *Talcott, Inc. v. Roto American Corp., supra,* the Court simply agreed with and adopted the conclusion in *City of Vermillion, S. D. v. Stan Houston Equipment Co., supra,* 123 N.J. Super. at 192, 302 A.2d 147. The *Vermillion* Court's entire analysis of the issue of "plain inconsistency" is as follows:

> 26 U.S.C.A. Sec. 6323(a) was enacted long after 31 U.S.C.A. Sec. 191 and is plainly in-

consistent with it. Congress could not have intended any other purpose for 26 U.S.C.A. Sec. 6323(a) than to give certain creditors priority over unfiled claims of the United States. Therefore, 31 U.S.C.A. Sec. 191 does not apply here and does not defeat the claim of the trustee in bankruptcy under 26 U.S.C.A. Sec. 6323(a).

*Id.* at 713.

ed States Supreme Court has never dismissed the possibility that such an exception might exist, see *United States v. Gilbert Associates*, 345 U.S. 361, 365, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953), the Court has nonetheless found every interest short of actual possession insufficient to overcome the effect of Section 191. A lien might meet the choateness standards set out in *United States v. New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954), necessary to overcome a federal tax lien, but Section 191's priority is measured by different standards. *United States v. Vermont*, 377 U.S. 351, 357–58, 84 S.Ct. 1267, 1270–1271, 12 L.Ed.2d 370 (1964).

In order to overcome the operation and effect of Section 191, the Supreme Court has stated, "[a] lien [must] be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor", *United States v. Gilbert Associates, supra*, 345 U.S. at 366, 73 S.Ct. at 1704. In *United States v. Vermont, supra*, the Court, albeit in *dicta*, reinforced this interpretation of Section 191 in the following language:

> Section 3466 [31 U.S.C. § 191] on its face permits no exception whatsoever from the statutory command that '[w]henever any person indebted to the United States is insolvent . . . debts due to the United States shall be first satisfied.' The statute applies to all the insolvent's debts to the Government, whether or not arising from taxes, and whether or not secured by a lien.

*Id.* 377 U.S. at 357, 84 S.Ct. at 1270–1271. The Court then quoted the portion of *United States v. Gilbert Associates, supra*, which suggests that only a possessory interest can withstand the Government's Section 191 priority. *Vermont, supra*, 377 U.S. at 357–58, 84 S.Ct. at 1270–1271.

In *Nesbitt v. United States, supra*, the plaintiff had obtained a judgment and, in compliance with state lien statutes, had recorded an abstract of that judgment. She did not, however, either prior to the insolvent decedent's death or at any other time,

"reduce her judgment lien to possession by [obtaining] a writ of execution", nor did she otherwise "execute[ ] on her lien". *Id.* at 831. Thus, the plaintiff in *Nesbitt* simply had a recorded judgment. The Ninth Circuit held that, "to the extent an exception to section 3466 [31 U.S.C. § 191] *might* exist for 'perfected and specific liens', the [plaintiff's] lien . . . was not sufficiently perfected and specific to come within any such exception". *Id.*, 622 F.2d at 433 (emphasis supplied).

■ In the present case, after plaintiff was awarded a $75,000.00 judgment against the estate, she obtained a writ of execution, and levied upon the assets of the estate then held by the Bank. Plaintiff made her levy, through the Union County Sheriff, on October 11, 1979. All of these actions, however, took place after plaintiff's husband had died and his estate had come into existence. This is not at all similar to those situations in which a consensual or other lien was created prior to insolvency, or the passing of property to an executor or other event triggering Section 191. In certain cases of that nature the courts have held that the debtor had dispossessed himself of those assets so that there was no property to which Section 191 could apply. *See, e.g.*, Plumb, "The Federal Priority in Insolvency: Proposals for Reform", 70 Mich.L.Rev. 3 (1971) at 4. In the case of an insolvent estate this dispossession has to take place before the property passes to the executor or administrator. *See Nesbitt v. United States, supra*, 445 F.Supp. at 831, 832.

■ A judgment per se is clearly inadequate to dispossess a debtor of his property so that it will be excluded from the effect of Section 191. If it be held that execution on the property to enforce the judgment is sufficient to dispossess a debtor of the property so that the property is removed from the reach of Section 191, the execution in the present case failed to achieve that result because it came after the husband's assets had passed to his executor and after it was obvious that the estate was insolvent.

One New Jersey court used a different rationalization under similar circumstances.

In *In re Hiawatha Do It Yourself, Inc.,* 82 N.J.Super. 399, 197 A.2d 715 (Co.Ct., Prob. Div.1964), the Court held, as a matter of federal law, that a judgment lien creditor who had levied on the property in question prior to the filing of the federal tax claim should prevail over the federal government's Section 191 priority as to that property. The Court tested the judgment creditor's lien under the *New Britain* standards of perfection and choateness, *see* 82 N.J.Super. at 406, 197 A.2d 715, instead of under the "possessory lien" requirement of *United States v. Gilbert Associates, Inc., supra.* The Supreme Court's *dicta,* in *United States v. Vermont, supra,* concerning Section 191 standards for determining priority, coming as it did four months after *In re Hiawatha,* suggests that the *Hiawatha* Court's reasoning was faulty. However, the results in that case might be justified under the federal cases because the executions were levied *before* the assignment for the benefit of creditors, the event which triggered Section 191 in that case. Thus, it might be argued that the insolvent debtor had been dispossessed of the property before the assignment.

### Conclusion

For the reasons stated above, I conclude that the FTLA does not create an exception to the operation of the federal government's priority in insolvency under 31 U.S.C. § 191, and that plaintiff's lien upon the assets of the Durham estate (presently held by defendant Bank) is not sufficient to overcome the effect of Section 191. Therefore, since there are no genuine issues of fact material to the resolution of this action, the United States is entitled to a judgment declaring that the debts due to it from the Durham estate shall be paid out of the estate's assets before plaintiff is entitled to satisfaction of her judgment.

Counsel for the Government is requested to prepare an order consistent with the views expressed in this opinion.