[No. A065688. First Dist., Div. One. Oct. 10, 1995.]

Estate of HOWARD SILBERMAN, Deceased.
JUDITH SILBERMAN, as Executor, etc., Petitioner and Respondent, v.
UNITED STATES OF AMERICA, Claimant and Appellant;
HOUSEHOLD FINANCE CORPORATION et al., Claimants and
Respondents.

**COUNSEL**

John A. Mendez, United States Attorney, Michael J. Yamaguchi and Jay R. Weill, Assistant United States Attorneys, and Joan Oppenheimer for Claimant and Appellant.

Judith Silberman, in pro. per., and Daniel J. Custer for Petitioner and Respondent.

M. Jeffrey Micklas for Claimants and Respondents.

**OPINION**

**STEIN, J.**—The United States appeals an order establishing the relative priority of claims to the proceeds of the sale of real property owned by

decedent Howard Silberman. The United States contends that, pursuant to the federal insolvency statute (31 U.S.C. § 3713) its unnoticed tax liens take priority over the prior recorded judgment liens of respondents Household Finance Corporation and Household Retail Services, Inc.

## FACTS

The executor filed a report of sale and a petition for an order confirming the sale of the property free and clear of liens and for distribution of the sale proceeds. In support of the petition, the executor filed a declaration asserting that the estate's liabilities for administrative expenses and claims against the decedent exceeded it assets by $215,497, and an amended petition which stated that the estate was unable to pay certain liabilities as they became due. The court appointed a special master to determine whether the estate was insolvent. The special master concluded that the estate had been insolvent since February 25, 1992.

The claimants competing for the sale proceeds were the United States, the California Franchise Tax Board, judgment creditors, and holders of claims for administrative expenses. The United States' claim was for unpaid federal taxes totaling $169,296.57, plus interest and penalties. A notice of federal tax lien had been filed on September 26, 1990, for $30,086.19. No notices had been filed with respect to the balance of the federal tax liens. Nevertheless, the United States claimed that it was entitled to priority ahead of respondents' judgment liens pursuant to the federal insolvency statute (31 U.S.C. § 3713).[1] Household Finance Corporation and Household Retail Services, Inc. (hereinafter respondents) held recorded judgments of $11,162.28 and $25,276.97. Respondents contended that Internal Revenue Code section 6323(a) (26 U.S.C. § 6323(a)), which provides that a tax lien shall not be valid against a judgment lien creditor until notice thereof has been properly filed, governed the validity of the tax liens. Pursuant to section 6323(a), the United States was entitled to priority only with respect to its noticed tax lien of $30,086.19.

On November 5, 1993, the court found that the estate was insolvent as of February 25, 1992, but denied the United States claim of priority based upon

---

[1] "§ 3713. Priority of Government claims

"(a)(1) A claim of the United States Government shall be paid first when—

"(A) a person indebted to the Government is insolvent and— [¶] (i) the debtor without enough property to pay all debts makes a voluntary assignment of property; [¶] (ii) property of the debtor, if absent, is attached; or [¶] (iii) an act of bankruptcy is committed; or [¶] (B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all debts of the debtor. [¶] (2) This subsection does not apply to a case under title 11.

"(b) A representative of a person or an estate (except a trustee acting under title 11) paying any part of a debt of the person or estate before paying a claim of the Government is liable to the extent of the payment for unpaid claims of the Government." (31 U.S.C. § 3713.)

the Federal Insolvency Statute. The United States moved for reconsideration, citing *Nesbitt* v. *United States* (N.D.Cal. 1978) 445 F.Supp. 824, affirmed (9th Cir. 1980) 622 F.2d 433, certiorari denied (1981) 451 U.S. 984 [68 L.Ed.2d 840, 101 S.Ct. 2315], in which the court held that Internal Revenue Code section 6323(a) does not create an implied exception to the federal insolvency statute. Respondents opposed the motion on procedural grounds and on the merits, relying on an opposing line of authority, exemplified by *City of Vermillion, S.D.* v. *Stan Houston Equipment Co.* (D.S.D. 1972) 341 F.Supp. 707.

The court denied the motion for reconsideration on the merits. The court explained its decision as follows: "I will be honest with you, this is a very difficult issue and I wish that I had a definitive case on this issue. The cases are in conflict. I have read all the cases that have been cited and I am persuaded by the reasoning in the *City of Vermillion* . . . . I realize it's not a Ninth Circuit case but I also realize that in terms of precedence that the Court is not . . . held to Ninth Circuit precedence. That the Court can look to other circuits. [¶] The problem I'm having is that 26 U.S.C.A. [6323(a)] was passed subsequently to 3713 [the Federal Insolvency Statute], and I find the reasoning persuasive that it was implied[ly] . . . amending 3713. I think they're both well-reasoned opinions. And due to the vagueness in the law, at least at this point, I think the arguments can be made both ways and all I'm saying [is] I find the arguments . . . more persuasive in *Vermillion*, then in *Nesbitt*. So the Motion for Reconsideration is denied."

On March 29, 1993, the court entered an order regarding disposition of sale proceeds, which reiterated the finding that the estate was insolvent on or about February 25, 1992. The order accorded first priority to administrative expenses owing to three claimants.[2] The court ruled that the next in order would be judgment lienors and governmental entities with filed tax liens, in the order in which they were recorded. Consequently, only the filed tax lien of the United States was accorded sixth priority in the amount of $30,086.19. The remainder of the proceeds, if any, were to be held in a reserve account pending further court order. The United States appealed from the March 29, 1994, order.

---

[2]The executor filed a brief seeking only to protect the priority given to the claims for administrative expenses. The United States does not challenge that portion of the court's order. Respondents, the holders of recorded judgment liens, contend that the court erred in giving the administrative expenses priority over its judgment liens. This argument for reversal of the court's order of priorities is not properly before this court because respondents did not file a cross-appeal. (*California State Employees' Assn.* v. *State Personnel Bd.* (1986) 178 Cal.App.3d 372, 382, fn. 7 [223 Cal.Rptr. 826].)

ANALYSIS

I.

*Applicability of Federal Insolvency Statute to Federal Tax Liens*

■    Two federal statutes, the Federal Tax Lien Act of 1966, specifically 26 United States Code section 6323(a) (hereinafter the Federal Tax Lien Act),[3] and the federal insolvency statute (31 U.S.C. § 3713) (hereinafter the Federal Insolvency Statute), would produce conflicting resolutions of the competing claims in this case. The United States contends its claims were entitled to first priority ahead of the respondents' judgment liens and the other secured creditors pursuant the Federal Insolvency Statute. The trial court, however, found that the Federal Tax Lien Act created an implied exception to the Federal Insolvency Statute with respect to federal claims based upon tax liens. Therefore, only the noticed tax lien was entitled to priority ahead of other liens recorded thereafter.

The United States Supreme Court has not decided the specific question whether the Federal Tax Lien Act created an implied exception to the first priority of claims of the United States established by the Federal Insolvency Statute. The court has, however, established fairly stringent requirements for finding an implied exception to the Federal Insolvency Statute in other contexts. In *United States* v. *Emory* (1941) 314 U.S. 423 [86 L.Ed. 315, 62 S.Ct. 317], the court stated that: "Only the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of [the Federal Insolvency Statute]." (*Id.* at p. 433 [86 L.Ed. at p. 325].) The *Emory* court concluded that, absent an express relinquishment of the government's priority it would not find that the National Housing Act created an implied exception to the Federal Insolvency Statute. (*Id.* at p. 430 [86 L.Ed. at p. 323].) In *United States* v. *Key* (1970) 397 U.S. 322 [25 L.Ed.2d 340, 90 S.Ct. 1049], the court considered the following factors in determining whether another federal statute created an implied exception to the Federal Insolvency Statute: (1) is the statute alleged to create an implied exception facially inconsistent with the Federal Insolvency Statute? (*id.* at pp. 328-329 [25 L.Ed.2d at pp. 346-347]); (2) would the application of the Federal Insolvency Statute render the competing statute meaningless? (*id.* at pp. 328-329 [25 L.Ed.2d at pp. 346-347]); and (3) does the legislative history of the competing federal statute suggest that the Legislature intended to relinquish or create an exception to the operation

---

[3]In pertinent part, 26 United States Code section 6323 provides that any federal tax lien "shall not be valid as against any purchaser holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof [has been recorded]."

of the Federal Insolvency Statute? (*id.* at pp. 329-332 [25 L.Ed.2d at pp. 347-349).

The lower federal courts and several state courts have applied and analyzed these factors with conflicting results. The superior court chose to adopt the reasoning of those courts that have found that the Federal Tax Lien Act created an implied exception to the Federal Insolvency Statute. These cases include *City of Vermillion, S.D.* v. *Stan Houston Equipment Co., supra,* 341 F.Supp. 707;[4] *James Talcott, Inc.* v. *Roto American Corporation* (1973) 123 N.J.Super. 183 [302 A.2d 147]; *In re Decker's Estate* (1946) 355 Pa. 331 [49 A.2d 714], certiorari denied *sub nom. Decker* v. *Kann* (1947) 331 U.S. 807 [91 L.Ed. 1828, 67 S.Ct. 1190]; *In re Meyer's Estate* (1946) 159 Pa.Super. 296 [48 A.2d 210]; but see *Estate of Berretta* (1981) 493 Pa. 441, 461 [426 A.2d 1098, 1108] (opinion of equally divided court follows *In re Decker's Estate,* but opinion in favor of reversal argues that *Decker* and *Meyer* should be overruled).[5]

These cases find that the purpose of the Federal Tax Lien Act was to protect the specified class of creditors from unnoticed federal tax liens. (See, e.g., *City of Vermillion, S.D.* v. *Stan Houston Equipment Co., supra,* 341 F.Supp. 707, 713.) They reason that the issue of priority only matters when the debtor is insolvent, and that therefore the protection against unnoticed federal tax liens accorded by the Federal Tax Lien Act would be rendered

---

[4]*City of Vermillion, supra,* is the only federal decision we have found squarely holding that the Federal Tax Lien Act created an implied exception to the priority of federal claims stated in the Federal Insolvency Statute. Unfortunately, it offers virtually no analysis in support of its conclusion other than the assertion that the Federal Tax Lien Act "was enacted long after [the Federal Insolvency Statute] and is plainly inconsistent with it. Congress could not have intended any other purpose for [the Federal Tax Lien Act] than to give certain creditors priority over unfiled claims of the United States." (341 F.Supp. at p. 713.) In *Exchange Bank & Trust Co.* v. *Tubbs Manufacturing Co.* (5th Cir. 1957) 246 F.2d 141, 143, certiorari denied *sub nom. City of Dallas, Texas* v. *Tubbs Manufacturing Co. Inc.* (1957) 355 U.S. 868 [2 L.Ed.2d 75, 78 S.Ct. 118], the court expressly declined to decide the question, but nevertheless reached a result that appears to rely on finding an implied exception. In *H. B. Agsten & Sons, Inc.* v. *Huntington Trust & Savings Bank* (4th Cir. 1967) 388 F.2d 156, 161, the concurrence expressed "grave [doubt concerning] the survival of the Insolvency Statute after enactment of the Federal Tax Lien Act of 1966" but nevertheless concluded that the Federal Tax Lien Act *did not* impliedly repeal the Insolvency Statute entirely, "so as to be inapplicable to a contractual claim."

[5]*Estate of Berretta, supra,* was a decision of an equally divided state supreme court and has no binding precedential value as a ruling on the merits. (See *Commonwealth* v. *Rightnour* (1976) 469 Pa. 107 [364 A.2d 927], overruled on other grounds by *Com.* v. *James* (1981) 493 Pa. 545, 547 [427 A.2d 148].) The decision in *In re Beretta* is significant, however, because it calls into question the strength of *In re Decker's Estate, supra,* 355 Pa. 331 [49 A.2d 714] and *In re Meyer's Estate, supra,* 159 Pa.Super. 296 [48 A.2d 210], two of the better reasoned cases holding that the Federal Tax Lien Act evidences a congressional intent to relinquish the federal priority pursuant to the Federal Insolvency Statute.

meaningless if federal claims based on unnoticed or later filed tax liens are nevertheless entitled to priority under the Federal Insolvency Statute whenever the debtor is insolvent. (See, e.g., *In re Decker's Estate, supra,* 49 A.2d 714, 720.) They further reason that to give an unnoticed federal tax lien priority would undermine the reliability of the notice filing system which is an essential provision for certainty and stability in commercial dealings. (*Estate of Berretta, supra,* 493 Pa. 441, 457 [426 A.2d 1098, 1106].)

By contrast, a series of more recent federal decisions have concluded that Congress did not intend the Federal Tax Lien Act to create an exception to the application of the Federal Insolvency Statute. (See *Commonwealth of Kentucky, Dept. of Rev.* v. *United States* (6th Cir. 1967) 383 F.2d 13; *Nesbitt* v. *United States, supra,* 445 F.Supp. 824; *Durham* v. *United States, by C.I.R.* (D.N.J. 1982) 545 F.Supp. 1093, 1096, affd. without opinion (3d Cir. 1983) 720 F.2d 661; *Carter* v. *Carter* (E.D.Va. 1988) 681 F.Supp. 323.) The leading case among these is the "scholarly and detailed opinion," in *Nesbitt* v. *United States, supra,* 445 F.Supp. 824 (*Durham* v. *United States, supra,* 545 F.Supp. 1093, 1096).

These decisions reject the contention that affording a federal tax lien priority under the Federal Insolvency Statute over claims of creditors that would have been protected under the Federal Tax Lien Act results in the "plainest inconsistency," because the two statutes operate in different contexts. (*Nesbitt* v. *United States, supra,* 445 F. Supp. 824, 829-830.) In *Carter* v. *Carter, supra,* 681 F.Supp. 323, the court explained the differences succinctly: "On its face the [Federal Tax Lien Act] facilitates enforcement of federal tax liens. More specifically, Section 6323 operates to protect innocent third parties from unrecorded or unnoticed federal tax liens when the debtor conveys property. The Insolvency Statute, by contrast, does not apply to property already conveyed by the debtor. Rather, it deals facially with the priority of underlying federal claims only against the property of an insolvent debtor in certain circumstances. While the provisions might lead to different results in certain contexts, there is no *facial* inconsistency sufficient to imply an exception to a statute Congress has continued in effect for nearly two centuries." (*Id.* at p. 328, fn. omitted, italics in original.)

These courts further reason that application of the Federal Insolvency Statute would not render the protections established by the Federal Tax Lien Act meaningless because ". . . the question of priorities may arise even where the debtor is solvent." (*Nesbitt* v. *United States, supra,* 445 F.Supp. at p. 830.) For example, the question of priorities pursuant to the Federal Tax Lien act arises whenever proceeds from *specific* property are insufficient to satisfy all of the competing claims even if the debtor is otherwise solvent.

Moreover, the Federal Insolvency Statute does not apply to all insolvencies: "Mere inability of the debtor to pay all his debts in ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute . . . [i.e. cases in which the estate of the decedent is insolvent, cases where the debtor makes a voluntary assignment of his property, or commits an act of bankruptcy, or where the property of an absent debtor is attached]." (*United States* v. *Oklahoma* (1923) 261 U.S. 253, 260 [67 L.Ed. 638, 644, 43 S.Ct. 295].) Consequently, "the [Federal Tax Lien Act] can continue to function in all other cases of debtor insolvency and in all cases of solvent debtors." (*Carter* v. *Carter*, *supra*, 681 F.Supp. 323, 328, fn. omitted.)

The court in *Nesbitt*, *supra*, also examined the legislative history of the Federal Tax Lien Act. The court concluded: "Nothing in the legislative history of the FTLA [the Federal Tax Lien Act] indicates any congressional intent to override [the Federal Insolvency Statute]. In fact, there is some evidence to the contrary. The American Bar Association ('ABA'), whose proposal ultimately led to the enactment of the FTLA, had recommended that Congress amend [the Federal Tax Lien Act] to coordinate the federal priority in insolvency with the relief against the federal tax lien proposed for certain liens and security interests (i.e., the relief afforded by § 6323 (a)). *Report of the Special Committee on Federal Liens,* in 84 ABA Annual Report 645, 731-736 (1959). Congress failed to act upon the ABA's proposal, however, apparently because the ABA's recommendation affected many federal claims in addition to tax claims and therefore fell outside the jurisdiction of the congressional committees that considered the ABA's proposed tax lien legislation. Plumb, 'The Federal Priority in Insolvency: Proposals for Reform,' 70 Mich. L.Rev. 3, 8 (1971). In 1970, the ABA proposed a revised version of its insolvency priority recommendation. *Id.* at 9-10. This proposal was considered by the Senate Judiciary Committee, but the resulting bill never passed out of committee. (See S. 2197, 92d Cong., 1st Sess. (1971)." (*Nesbitt* v. *United States*, *supra*, 445 F.Supp. 824, 829.) The court concluded that it could not "lightly disregard the fact that Congress has been requested on at least two occasions to amend [the Federal Insolvency Statute] in a manner which would achieve the result sought here by plaintiff, but it has not yet so amended that section." (*Ibid.*)

In the absence of a controlling decision of the United States Supreme Court, we, of course, are not bound by either line of federal authority. (*Rohr Aircraft Corp.* v. *County of San Diego* (1959) 51 Cal.2d 759, 765 [336 P.2d 521], revd. on other grounds (1960) 362 U.S. 628 [4 L.Ed.2d 1002, 80 S.Ct. 1050].) We conclude that *Nesbitt* and its progeny are the better reasoned decisions, and accordingly shall reverse the trial court's order, for the following reasons.

The issue before us is one of federal law, and it is our duty to resolve the issue as we would expect it to be resolved by the federal courts. The decision in *City of Vermillion*, *supra*, stands alone in federal courts, and offers little in the way of analysis in support of its conclusion. By contrast, the majority of federal courts of appeals that have considered the question, have concluded that Congress did not intend the Federal Tax Lien Act to create an exception to the Federal Insolvency Statute. (See *Nesbitt* v. *United States*, *supra*, 445 F.Supp. 824; see *Commonwealth of Kentucky, Dept. of Rev.* v. *United States*, *supra*, 383 F.2d 13; *Durham* v. *United States by C.I.R.*, *supra*, 545 F.Supp. 1093, 1096.) In addition, the district court in *Carter* v. *Carter*, *supra*, 681 F.Supp. 323, has also filed a well-reasoned decision, following this line of authority. Thus the weight of federal authority is against finding that the Federal Tax Lien Act created an implied exception to the Federal Insolvency Statute.

More fundamentally, we are persuaded by the analysis of the legislative history presented in *Nesbitt* v. *United States*, *supra*, 445 F.Supp. 824, that Congress did not intend the Federal Tax Lien Act to operate as an implied exception to the Federal Insolvency Statute. Our task is essentially one of statutory construction, *Carter* v. *Carter*, *supra*, 681 F.Supp. 323, 330, and the ultimate question must be whether Congress intended, by enacting the Federal Tax Lien Act, to amend the Federal Insolvency Statute rendering it inapplicable to federal tax liens. The fact that congress was twice presented with proposals to accomplish this end, and did not adopt them strongly supports the inference that it was informed of the policy considerations in favor of such legislation and nevertheless declined to amend the Federal Insolvency Statute. (See *Carter* v. *Carter*, *supra*, 681 F.Supp. 323, 330.) Moreover, in 1978, when Congress was persuaded by the policy arguments in support of amending the Federal Insolvency Statute to exclude Bankruptcy proceedings from its application, it did so by expressly excluding a "case under title 11" from the Federal Insolvency Statute. (See 31 U.S.C. § 3713.) If Congress were persuaded that an exception to the Federal Insolvency Statute should exist with respect to the priority of federal tax liens, this result could be similarly accomplished by a simple amendment. In the absence of a clearer expression of congressional intent to create an exception to the Federal Insolvency Statute, we decline to imply one.

No doubt there are strong policy arguments in support of amending the Federal Insolvency Statute to provide that it does not impair any other valid lien or security interest that would have been entitled to priority over a

federal tax lien pursuant to the Federal Tax Lien Act.[6] By the same token, Congress may have elected, instead, to insure the payment of federal tax claims in the case of insolvencies as defined by the Federal Insolvency Statute. In either case, ". . . policy arguments of this sort should be addressed to Congress, not to courts. If the primacy of the Insolvency Statute produces harsh results in certain contexts, it is for Congress, not this Court, to strike the proper balance between such results and the need to protect and assure collection of government claims." (*Carter* v. *Carter*, *supra*, 681 F.Supp. 323, 330, fn. omitted.)

## II.

### *Exception for "Specific and Perfected Liens"*

■ Respondents contend that even if the Federal Insolvency Statute applies, the priority of federal claims was never intended to overcome an antecedent lien, and that it was intended only to apply to the unencumbered property of the insolvent debtor. This is the thesis of a scholarly article by Frank R. Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien* (1954) 63 Yale L.J. 905. The article analyzes a series of very early United States Supreme Court decisions that held certain liens prevailed over the general federal priority pursuant to the Federal Insolvency Statute.[7] However, the same article acknowledges that subsequent Supreme Court decisions departed from this interpretation of the Federal Insolvency Statute, without recognizing or overruling its earlier decisions to the contrary. In these subsequent decisions

---

[6] For a summary of these arguments see Plumb, *The Federal Priority in Insolvency: Proposals for Reform* (1972) 70 Mich. L.Rev. 3.

[7] One of the first departures from the early cases holding that the federal priority does not overcome an antecedent lien was *Thelusson et al.* v. *Smith* (1817) 15 U.S. (2 Wheat.) 396 [4 L.Ed. 271]. The court held that a bona fide conveyance or a mortgage might take priority over a federal claim under the Federal Insolvency Statute, because the debtor is divested of the property, but held that a general judgment lien was not excepted from the operation of the Federal Insolvency Statute. (See Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien*, *supra*, 63 Yale L.J. 905, 908-911.) Respondents contend that *Thelusson* was subsequently overruled, but the only authority they cite for the proposition is an 1857 opinion of the United States Attorney General, *Case of Richardson*, 9 Ops.Atty.Gen. 28 (1857.) In *United States* v. *Texas* (1941) 314 U.S. 480 [86 L.Ed. 356, 62 S.Ct. 350] the court did question the continued vitality of *Thelusson*, but not in a manner that would support respondent's contention that its judgment liens should have priority. The court questioned *Thelusson* to the extent that it suggested that a previously executed mortgage would overcome the federal priority. (*Id.* at p. 486 [86 L.Ed. at pp. 361-362].) The court implicitly *endorsed* the conclusion of *Thelusson* that a judgment lien does not prevail over "unsecured claims of the United States," because it interpreted *Thelusson* as not requiring the subordination of federal claims even to specific and perfected liens. (*Id.* at p. 486 [86 L.Ed.at pp. 361-362].)

the court broadened its interpretation to the Federal Insolvency Statute to uphold federal claims against virtually all antecedent liens, yet did not foreclose the possibility that an exception might exist for a "specific and perfected lien." (*Id.* at pp. 914-916.)

The court has held that "[i]n order to overcome the operation and effect of [the Federal Insolvency Statute] . . . '[a] lien [must] be attached to certain property by reducing it to possession, on the theory that the United States has no claim against property no longer in the possession of the debtor.'" (*Durham* v. *United States, by C.I.R., supra,* 545 F.Supp. 1093, 1097; quoting *United States* v. *Gilbert Associates* (1953) 345 U.S. 361, 366 [97 L.Ed. 1071, 1076-1077, 73 S.Ct. 701]; see also *Nesbitt* v. *United States, supra,* 445 F.Supp. 824, 831.) The court has further specifically rejected the contention that a recorded lien is sufficiently perfected and specific to overcome the federal priority. In *Illinois* v. *Campbell* (1946) 329 U.S. 362 [91 L.Ed. 348, 67 S.Ct. 340] the court held that "[t]he federal priority is not destroyed by state recording acts any more than by state statutes creating or otherwise affecting liens." (*Id.* at p. 375 [91 L.Ed. at p. 357].) Thus, assuming arguendo, that an exception to the Federal Insolvency Statute exists for "specific and perfected liens," respondents' recorded judgment liens would not fall within the exception.

III.

*Finding of Insolvency*

■  Respondents suggest, as an alternative ground for upholding the court's decision to deny the United States' claim of priority based on the Federal Insolvency Statute that the trial court erred in finding that the estate was insolvent as of February 25, 1992. The special master appointed by the court to determine whether the estate was solvent relied upon the inventoried estate which showed assets of $2,260,436 and creditor's claims of $6,710,275. Of these claims, "approximately $3,413,775, comprised claims alleging professional negligence by the decedent."

Respondents contend that the special master should have conducted an independent valuation of the estate's assets and liabilities instead of relying on the inventory. None of the parties, however, offered any evidence to the special master to refute the valuations set forth in the inventory. The special master therefore reasonably relied on this undisputed evidence of the value of the estate's assets and liabilities.

Respondents also challenge the special master's conclusion that it was not required to evaluate the merits of professional negligence claims filed

against the estate, before considering them as liabilities of the estate. At least one court has held "mere pendency of claims . . . constitutes sufficient evidence" of insolvency and that it is within the court's discretion to refuse to evaluate the merits of the claims. (*Estate of Anderson* (1977) 68 Cal.App.3d 1010, 1015 [137 Cal.Rptr. 727].) In any event, even excluding the professional negligence claims, substantial evidence supported the finding of insolvency because the balance of the estates' liabilities were valued at $3,296,500, which amount exceed the value of the assets, appraised at $2,260,436.

## CONCLUSION

The court's order is reversed, only to the extent that it gave priority to respondent judgment lienors ahead of the claims of the United States. In all other respects the judgment is affirmed. The matter is remanded for further proceedings consistent with this opinion.

Appellant is entitled to costs on appeal.

Strankman, P. J., and Dossee, J., concurred.