**Carole Vandergrift CARTER, Plaintiff,**

v.

**William Douglas CARTER and T–Cas of America, Inc., Defendants,**

v.

**UNITED STATES of America, Intervenor.**

Civ. A. No. 87–1021–A.

United States District Court, E.D. Virginia, Alexandria Division.

March 8, 1988.

John F. McGinley, Alexandria, Va., for plaintiff.

Jeffrey B. Rice, Fairfax, Va., for defendant Carter.

John E. Harrison, McLean, Va., for defendant T–Cas America.

Nash Schott, Asst. U.S. Atty., Alexandria, Va., for intervenor.

MEMORANDUM OPINION

ELLIS, District Judge.

*Introduction*

In this case, a federal tax claim and a prior judgment lien compete for the same assets. The case has an involved history; it grows out of an apparently hotly contested divorce action. The government's claim is based on federal income tax deficiencies assessed initially against the husband and wife, defendant William D. Carter and complainant Carole V. Carter. Defendant T–

CAS America, Inc. (T–Cas) has a judgment lien on the same assets based on the husband's unpaid debts to T–Cas. The assets involved are the proceeds from the sale of the marital home.

The central question presented is whether the federal tax claim is entitled to priority over T–Cas's earlier judgment lien. Resolution of this issue requires the Court to determine whether the case is governed by the Federal Tax Lien Act of 1966 (FTLA), 26 U.S.C. §§ 6321–6323,[1] or the much older federal Insolvency Statute, 31 U.S.C. § 3713.[2] The FTLA, if applicable, would confer priority on the T–Cas lien whereas the Insolvency Statute, if applicable and under certain circumstances, makes the government tax claim the winner.

Determining which statute governs is the central and threshold, though not the sole, issue presented. As this matter is before the Court on summary judgment, the Court, after determining which statute controls, must then consider whether any material facts remain genuinely in dispute.

### Facts

Complainant Carole Carter and defendant William Carter are Virginia citizens and residents of Loudoun County. Defendant T–Cas, a Virginia corporation, has one class of stock, half of which is owned by William Carter.[3] The genesis of this case is the Carters' divorce, which was filed in Loudoun County's circuit court in March, 1986.[4] Prior to the commencement of the divorce, William Carter borrowed a substantial sum of money from T–Cas. From May, 1980 to February, 1986, William Carter executed thirty-one demand promissory notes representing a total indebtedness to T–Cas of $1,117,000. The notes were never paid. A substantial portion of the funds borrowed from T–Cas were apparently invested in Greenwood Farm, the marital home located in Loudoun County. On September 15, 1987, at the direction of the Loudoun County Circuit Court, Greenwood Farm was sold and the proceeds, now totaling over $1,427,000, were placed in escrow with that court's General Receiver. It is Mr. Carter's one-half share of the proceeds from the sale of Greenwood Farm that is the object of the competition between the federal tax claim and the T–Cas judgment lien.

The following paragraphs briefly describe the genesis of (1) the T–Cas judgment lien, (2) the federal tax claim and (3) Mrs. Carter's lien, which she no longer asserts, but which is nonetheless helpful to an understanding of the genesis of this action.

1. *The T–Cas Lien.* In April, 1987, events commenced that led ultimately to the T–Cas judgment lien. In light of the unpaid promissory notes, the T–Cas Board met and passed a resolution to take action to collect the notes. William Carter, who served as a Board member, attended this meeting, but did not vote. Pursuant to this resolution, counsel for T–Cas filed suit in the Circuit Court for Fairfax County.[5] William Carter chose not to respond. T–Cas

---

1. Throughout this opinion, the term "FTLA" is used to refer to sections 6321 through 6323 of the Internal Revenue Code, 26 U.S.C. §§ 6321–6323.

2. The principal of primacy for debts owed to the United States by an insolvent debtor was first adopted by Congress in 1797, Act of March 3, 1797, ch. 20, § 5, 1 Stat. 515, and was continued essentially unchanged in successor statutes, 31 U.S.C. § 191 (sometimes referred to as Section 3466 of the Revised Statutes), to today's version embodied in 31 U.S.C. § 3713. Sections 6321 and 6323 of the Internal Revenue Code and their predecessors are of more recent vintage. Section 6321, which creates a lien based on a tax assessment, traces its lineage to the Act of July 13, 1866, ch. 184, § 9, 14 Stat. 107. Section

6323, the specific provision in issue here, apparently stems from the Act of March 4, 1913, ch. 166, 37 Stat. 1016. The FTLA of 1966 merely amended section 6323 to clarify the class of persons to be protected against unrecorded federal tax liens.

3. The owner of the remaining half, James S. Stotsky, has no involvement in this litigation.

4. *Carter v. Carter,* Chancery No. 10194 (Loudoun County Cir.Ct. filed Mar., 1986). A final decree in this suit was entered by the court on February 8, 1988.

5. *T–Cas America, Inc. v. William D. Carter,* At Law No. 78935 (Fairfax County Cir.Ct. filed May 1, 1987).

obtained a default judgment for $1,193,-851.32, the full amount of the principal and interest due on the notes.[6] This default judgment was docketed on August 4, 1987.[7] Thereafter, on September 23, 1987, one week after the sale of the farm, the Loudoun County Circuit Court ordered the T-Cas judgment lien transferred to the proceeds of the sale. It is this lien which T-Cas asserts is superior to the government's tax claim.

2. *The Federal Tax Claim.* On or about January 30, 1987, Mr. Carter filed an amended return for the 1982 tax year, showing federal income taxes due and owing for 1982 in the amount of $993,855.65. Mrs. Carter did not sign the return. Thereafter, on September 18, 1987, the Internal Revenue Service issued an assessment against Mr. and Mrs. Carter for the full amount of taxes and interest owing to the United States. Then, on September 22, the United States filed a notice of levy in the land records of Loudoun County.

By statute,[8] the issuance of the government's assessment created a lien in favor of the United States upon the property of Mr. and Mrs. Carter as of September 18. Subsequently, however, the government withdrew its assessment against Mrs. Carter based on her apparent refusal to sign the amended return. Thus the claim and statutory lien asserted here by the government attach only to Mr. Carter's share of the Greenwood Farm sale proceeds.

3. *Mrs. Carter's Lien.* In the course of the divorce proceeding, the state circuit court judge, in an apparent attempt to safeguard the marital assets, issued an order precluding Mr. Carter from selling, transferring or encumbering any marital assets, including Greenwood Farm and the T-Cas stockholdings. In the summer of 1986, Mr. Carter sought relief from this order. He asked the court to lift the ban on stock transfers in return for which he pledged his one-half share in Greenwood Farm as security for any equitable distribution of marital assets the Loudoun County court might ultimately order in the divorce suit. The court approved this arrangement by stipulation order dated September 8, 1986 with *nunc pro tunc* effect to June 2, 1986.[9] On September 11, 1986, Mrs. Carter brought suit in Loudoun County against Mr. Carter and T-Cas to establish the priority of her putative lien.[10] She claimed that Mr. Carter's pledge and the September 8 stipulation order created a lien on the property in her favor. It is this suit that is now before the bar of this Court. The United States successfully intervened in state court on October 2, 1987[11] and then removed to federal court on October 10, 1987, pursuant to 28 U.S.C. § 1444. Prior to removal, the state court entered a decree holding the T-Cas lien valid and prior to Mrs. Carter's lien arising from the stipulation order.[12] That decree also gave the

---

**6.** *T-Cas America, Inc. v. Carter,* At Law No. 78935 (Fairfax County Cir.Ct. June 19, 1987). Counsel for William D. Carter apparently appeared at the hearing on the motion for entry of default judgment and endorsed the final order.

**7.** T-Cas thereafter undertook to enforce the judgment by garnishment and writs of *fiere facias.* On September 15, 1987, these efforts were enjoined by the Circuit Court of Loudoun County in connection with the divorce suit.

**8.** *See* 26 U.S.C. §§ 6321, 6322.

**9.** *Carter v. Carter,* Chancery No. 10194 (Loudoun County Cir.Ct. Sept. 8, 1986). Though not entirely clear, it appears that the state court gave the order *nunc pro tunc* effect to insure that it covered certain transactions involving marital assets that occurred between the June 2 hearing approving such transactions and September 8, the date the order was ultimately entered. The record here discloses no reason

for the several-month delay in the entry of the order.

**10.** *Carter v. Carter, et al.,* Chancery No. 11023 (Loudoun County Cir.Ct. filed September 11, 1987).

**11.** *Carter v. Carter, et al.,* Chancery No. 11023 (Loudoun County Cir.Ct. October 2, 1987) (order allowing intervention).

**12.** *Carter v. Carter, et al.,* Chancery No. 11023 (Loudoun County Cir.Ct. October 2, 1987).

Mrs. Carter no longer asserts this lien. The Circuit Court of Loudoun County, as part of its final order distributing the marital property in the divorce case, granted Mrs. Carter an undivided one-half interest in the proceeds of the sale of Greenwood Farm. Since Mrs. Carter did not sign the 1982 tax return, the United States does not, as yet, assert any tax claim against Mrs. Carter's one-half interest in these proceeds.

United States until 6:00 p.m. on that date to file its intervention papers and pleadings.

In summary, therefore, the cause before this Court pits the T–Cas judgment lien of August 4, 1987 in the approximate amount of $1,117,000 against the government's September 18, 1987 tax assessment in the approximate amount of $1,194,000. Both liens seek satisfaction from Mr. Carter's one-half share of the Greenwood Farm sale proceeds, approximately $713,500. T–Cas and the government agree that the T–Cas lien would be entitled to priority if the Insolvency Statute is inapplicable and the case is governed by Section 6323 of the FTLA. In this event, there would be no disputed material issues of fact and summary judgment for T–Cas would be appropriate. The government contends, however, that Section 3713 governs and therefore the federal tax claim deserves priority under this section because Mr. Carter is insolvent and has committed an "act of bankruptcy."

T–Cas disputes the government's position on two grounds. First, T–Cas argues that Section 3713 does not apply in the case of tax claims because the FTLA operates as an exception to the application of the more general Section 3713. Second, T–Cas disputes whether Mr. Carter in fact is insolvent and has committed any "act of bankruptcy."

On this basis, the United States and Mrs. Carter have moved the Court for an order dismissing Mrs. Carter from the case. That motion is under advisement, but has no direct bearing on the issues in this Memorandum Opinion. The Court notes, however, that the United States has commenced administrative proceedings against Mrs. Carter to determine whether to assert a claim against her based on 1982 federal income tax deficiencies. The Court also notes that Mr. Carter objects to the dismissal of Mrs. Carter from this suit because he contends that tax liability, if any, is ultimately joint and should attach to Mrs. Carter's assets as well.

13. Interestingly, "act of bankruptcy" was defined in substantial detail in Chapter III of the Bankruptcy Act, 11 U.S.C. § 21(a) (1976). However, the section containing the definition was repealed in 1978. Revised Chapter III contains no definition of this phrase. In 1978, Congress also added a sentence to Section 3713 directing that the priority established by that Section does not apply in a Title 11 bankruptcy case. While

For the reasons that follow, the Court rejects T–Cas's contention that Section 3713 does not apply to federal tax claims where, as here, there is a contention that the taxpayer is insolvent. Accordingly, T–Cas's summary judgment motion must be denied. Moreover, summary judgment for the government is also inappropriate given that there are disputed fact issues regarding whether Mr. Carter is insolvent and has committed any act of bankruptcy.

### Analysis

Because the central question is the applicability of two statutes, analysis appropriately begins with the statutory language. The Insolvency Statute is remarkably straightforward and free from significant ambiguity. It states:

(a)(1) A claim of the United States Government shall be paid first when—

(A) A person indebted to the Government is insolvent and—

. . . .

(iii) an act of bankruptcy is committed[.] [13]

31 U.S.C. § 3713.

▮ A sharp focus solely on the statutory language makes unmistakably clear that the section applies to the instant case. The tax assessment against Mr. Carter is plainly "a claim of the United States

the concept of an act of bankruptcy is no longer needed in Title 11 law, it remains a vital part of the Insolvency Statute. As the Supreme Court noted in *United States v. Oklahoma,* 261 U.S. 253, 43 S.Ct. 295, 67 L.Ed. 638 (1923), "insolvency" within the meaning of Section 3713 requires more than an excess of liabilities over assets.

Mere inability of the debtor to pay all his debts in [the] ordinary course of business is not insolvency within the meaning of the act, but it must be manifested in one of the modes pointed out in the latter part of the statute which defines or explains the meaning of insolvency referred to in the earlier part.

*Id.* at 260, 43 S.Ct. at 297–98. The Insolvency Statute provides that the requisite insolvency may be manifested in three modes or ways, one of which is an "act of bankruptcy." The other two occur when an insolvent debtor (i) makes a voluntary assignment of property or (ii) has property attached and is absent. These additional modes of manifesting insolvency are not alleged and are therefore irrelevant here.

Government." *See Price v. United States,* 269 U.S. 492, 499, 46 S.Ct. 180, 181, 70 L.Ed. 373 (1926) (taxes due held to be debts under Section 3466, the predecessor of Section 3713); *Illinois ex rel Gordon v. United States,* 328 U.S. 8, 9, 66 S.Ct. 841, 842, 90 L.Ed. 1049 (1946) (same). This, coupled with the government's allegations of insolvency and acts of bankruptcy on the part of Mr. Carter, leave no doubt that Section 3713, by its terms, applies here. T–Cas argues, however, that the application of Section 6323 is equally clear. Moreover, T–Cas contends that since Section 6323 relates specifically to priority of federal tax liens vis a vis other types of liens, it is therefore an exception to the more general statute, Section 3713. Put another way, T–Cas argues that Section 3713 is a general application statute that does not apply in the tax context because Section 6323 is specific to that context.

 This argument is ultimately unpersuasive. In the first place, there is nothing in the text or legislative history of either provision to suggest that Congress intended the FTLA to be the government's exclusive tax collection remedy. Far more plausible, in the face of congressional silence, is the inference that Congress intended the FTLA to supplement the Insolvency Statute, not to displace it. Thus, the provisions should be harmonized as much as possible by construing them, as this Court does, to mean that in certain defined cases of taxpayer insolvency, the Insolvency Statute governs, and in all other cases, Section 6323 controls.

An analysis of statutory purposes lends some support to this attempt to harmonize the statutes. Both statutes have essentially the same overall purpose. Simply put, the purpose of the Insolvency Statute is to assure adequate revenue to discharge the debts and obligations of the federal government. *See United States v. State Bank of North Carolina,* 31 U.S. (6 Pet.) 29, 8

L.Ed. 308 (1832). The overall purpose of the FTLA is essentially the same: to facilitate the collection of taxes due and owing to the government. *See* 112 Cong.Rec. 22224 (1966). By harmonizing the statutes, as this Court does, the overall purposes of both statutory schemes are effectuated; collection of government claims is facilitated, thereby helping to assure revenues for the operation of the government.

Nor does the specific purpose of Section 6323 directly contradict this conclusion. Section 6323's purpose is to protect innocent third parties, purchasers, judgment lien creditors and the like from so-called "secret liens," government liens that might arise and take effect without notice. *See* 49 Cong.Rec. 1802 (1913).[14] While this specific purpose might, in some instances, conflict with the goal of the Insolvency Statute, it is important to keep in mind that Section 6323 is but one part of the FTLA, which has tax revenue collection as its overall purpose. Thus, granting primacy to the Insolvency Statute in certain specific insolvency situations permits Section 6323 to operate in all other insolvency situations and in all cases where the debtor is solvent. At the same time, the Court's interpretation promotes the overall purposes of the FTLA and the Insolvency Statute. In essence, the Court has construed two potentially conflicting statutes to be consistent with each other while, simultaneously, seeking to effectuate the dominant purposes of both statutory schemes.[15]

T–Cas's principal argument is that this Court should find that Section 6323 is an implied exception to the Insolvency Statute. This argument merits close scrutiny for it is the heart of the statutory construction question presented here. It has long been settled that "[o]nly the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of [the Insolvency Statute]." *United States v. Emory,* 314 U.S.

---

**14.** *See U.S. v. Snyder,* 149 U.S. 210, 13 S.Ct. 846, 37 L.Ed. 705 (1893) (example of inequity of secret federal lien).

**15.** Also, it is an not illogical for Congress to insist upon priority in certain insolvency situa-

tions while agreeing to subordinate in all other situations. While there is solvency, and presumably the avoidance of certain insolvency situations, there is hope and apparently no felt need for federal priority.

423, 433, 62 S.Ct. 317, 322–23, 86 L.Ed. 315 (1941).[16] In *United States v. Key*, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970), the Supreme Court considered whether the "plainest inconsistency" existed between the Insolvency Statute and Chapter X of the Bankruptcy Act. In deciding that no such inconsistency existed, the Court set forth a three part test to be used in evaluating whether there exists a "plainest inconsistency" sufficient to warrant an implied exception to federal priority in insolvency. To establish a "plainest inconsistency", a party, under *Key*, must demonstrate (1) that the Insolvency Statute and Section 6323 are facially inconsistent; or (2) that an unconditional application of the Insolvency Statute would render Section 6323 meaningless; or (3) that the legislative history of Section 6323 reflects a congressional intent to modify the effect of the Insolvency Statute. These tests create, in effect, a rebuttable presumption that Congress intended no exceptions to the Insolvency Statute.

■ T–Cas has not rebutted this presumption; none of the tests is met here. First, there is no facial inconsistency between the provisions. They operate in wholly separate spheres. On its face, the FTLA facilitates enforcement of federal tax liens. More specifically, Section 6323 operates to protect innocent third parties from unrecorded or unnoticed federal tax liens when the debtor conveys property. The Insolvency Statute, by contrast, does not apply to property already conveyed by the debtor.[17] Rather, it deals facially with the priority of underlying federal claims only against the property of an insolvent debtor in certain circumstances. While the provisions might lead to different results in certain contexts, there is no *facial* inconsistency sufficient to imply an exception to a statute Congress has continued in effect for nearly two centuries. Second, application of the Insolvency Statute here without implying an exemption does not render the FTLA meaningless. Since the Insolvency Statute operates only in certain cases of insolvency, the FTLA can continue to function in all other cases of debtor insolvency[18] and in all cases of solvent debtors. Finally, the third test is also not met; nothing in the legislative history of the FTLA generally or Section 6323 specifically indicates that Congress intended the FTLA to override the Insolvency Statute.[19]

16. In *Emory*, the Court held that the "plainest inconsistency" did not exist between the Insolvency Act and the National Housing Act, and hence no implied exception to the former Act was warranted. 314 U.S. at 430, 62 S.Ct. at 321.

17. *See United States v. Gilbert Assoc., Inc.*, 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071 (1953) ("the United States has no claim against property no longer in the possession of the debtor"); *Thelusson v. Smith*, 15 U.S. (2 Wheat) 396, 4 L.Ed. 271 (1817).

It is occasionally argued that perfected and specific liens are excepted from the operation of the Insolvency Statute. While the Supreme Court has never clearly accepted this argument, it has avoided it by finding that the liens at issue were not sufficiently perfected and specific. *See United States v. Gilbert Assoc's, Inc.*, 345 U.S. 361, 366, 73 S.Ct. 701, 704, 97 L.Ed. 1071; *Illinois v. Campbell*, 329 U.S. 362, 370–371, 67 S.Ct. 340, 345, 91 L.Ed. 348 (1946); *United States v. Waddill, Holland & Flinn, Inc.*, 323 U.S. 353, 355–356, 65 S.Ct. 304, 305–306, 89 L.Ed. 294 (1945); *United States v. Texas*, 314 U.S. 480, 486–88, 62 S.Ct. 350, 353–54, 86 L.Ed. 356 (1941). It seems clear that only liens reduced to possession would be exempt from the Insolvency Statute. This precise issue is not before the

Court on this summary judgment motion, but may later become relevant.

18. This point played an important role in the well-reasoned decision in *Nesbitt v. United States*, 445 F.Supp. 824, 828 (N.D.Cal.1978), *aff'd*, 622 F.2d 433 (9th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981), holding that the Insolvency Statute was not displaced, *pro facto*, by the FTLA.

19. Indeed, an expansive view of legislative history suggests Congress does not intend any exceptions to the Insolvency Statute. Despite several calls for congressional action to make tax liens an exception to the Insolvency Statute, Congress has not acted. *See* Plumb, *Federal Liens & Priorities—Agenda for the Next Decade*, 77 Yale L.J. 228, 243 (1967), which outlines the American Bar Association's proposals for rationalizing potential conflicts between the FTLA and the Insolvency Statute. *See also* Plumb, *The Tax Recommendations of the Commission on the Bankruptcy Laws—Priority and Dischargeability of Tax Claims*, 59 Cornell L.Rev. 991 (1974); *H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank*, 388 F.2d 156, 161–62 (4th Cir.1967) (Haynsworth, J., concurring), *cert. denied*, 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968).

In summary, the FTLA, including Section 6323, does not pass muster as an implied exception to the Insolvency Statute. It fails to meet the specific tests established by the Supreme Court in *United States v. Key* to evaluate asserted implied exceptions. The "plainest inconsistency" that might warrant implying an exception is not present here. Accordingly, if the government proves its allegations of insolvency and acts of bankruptcy, the Insolvency Statute governs this case.

The question presented here is knotty, but not novel. Several courts have wrestled with the question and not surprisingly, results have not been uniform.[20] The Supreme Court has never squarely faced the question whether Section 6323 is an implied exception to the Insolvency Statute. It has, however, had occasion to consider whether other provisions operated as implied exceptions. On every such occasion, the Court has declined to find an implied exception.[21] This is supportive of the result reached here.

There is no controlling Fourth Circuit precedent. One decision, however, is somewhat similar. It involves a competition between the Insolvency Statute and a state mechanics' lien provision. In *H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank*, 388 F.2d 156 (1967) (*en banc*), cert. denied, 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968), the court of appeals held that where a debtor was insolvent, the Insolvency Statute required that a deed of trust held by the Small Business Administration (SBA) be accorded priority over a mechanics' lien that was inchoate at the time the SBA deed of trust was executed. *Id.* at 158–59.[22] This conclusion—primacy of the Insolvency Statute—is wholly consistent with the result reached here. But in reaching this conclusion, the *Agsten* court, in *dicta*, suggested that another result might obtain in the tax lien context. The lienor there argued that since Section 6323(a) subordinates unrecorded federal tax liens to mechanics' liens, federal contractual claims should suffer the same fate. In rejecting this argument, the court stated:

> Covering all debts owing the federal government by an insolvent debtor, the insolvency statute, as has long been established, does not create a lien but simply establishes a priority. On the other hand, the [FTLA], by its terms applies only to tax debts, does create a lien and encompasses all taxpayers regardless of their solvency.

*Agsten*, 388 F.2d at 160 (citations omitted). T–Cas argues that this language means that the Fourth Circuit would hold that Section 6323 overrides the Insolvency Statute in tax lien situations.

---

**20.** For decisions holding, as this Court does, that Section 6323 of the FTLA does create an implied exception to the Insolvency Statute, *see Kentucky, Dep't of Revenue v. United States*, 383 F.2d 13, 15–16 (6th Cir.1967); *Durham v. United States*, 545 F.Supp. 1093, 1096 (D.N.J.1982), aff'd mem., 720 F.2d 661 (3rd Cir.1983); *Nesbitt v. United States*, 445 F.Supp. 824, 830 (N.D.Cal. 1978), aff'd, 622 F.2d 433 (9th Cir.1980), cert. denied, 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981); *Wing v. United States*, 208 F.Supp. 5, 7–8 (D.Mass.1962); *see also United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954); *NLT Computer Services Corp. v. Capital Computer Systems, Inc.*, 31 B.R. 960, 963–65 (M.D.Tenn.1983), vacated on other grounds, 755 F.2d 1253, 1262 (6th Cir.1985) (priorities of Bankruptcy Code, rather than § 3713, governed the case).

For decisions holding the contrary *see City of Vermillion v. Stan Houston Equip. Co.*, 341 F.Supp. 707, 713 (D.S.D.1972); *James Talcott, Inc. v. Roto Corp.*, 123 N.J.Super. 183, 302 A.2d 147 (1973); *National Surety Corp. v. Sharpe*, 236 N.C. 35, 72 S.E.2d 109 (1952); *In re Berretta*, 493 Pa. 441, 426 A.2d 1098 (1981); *In re Decker's Estate*, 355 Pa. 331, 476, 49 A.2d 714 (1946), cert. denied, 331 U.S. 807, 67 S.Ct. 1190, 91 L.Ed. 1828 (1947).

**21.** *See United States v. Moore*, 423 U.S. 77, 82–3, 96 S.Ct. 310, 313–14, 46 L.Ed.2d 219 (1975); *United States v. Key*, 397 U.S. 322, 324–25, 90 S.Ct. 1049, 1051–52, 25 L.Ed.2d 340 (1970). *See also United States v. Vermont*, 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964), which upheld the priority of a state lien in the absence of insolvency, but indicated in *dictum* that "Section 3466 [the Insolvency Statute] on its face permits no exception whatsoever." *Id.* at 357, 84 S.Ct. at 1270.

**22.** The federal SBA claim was not accorded priority over a bank deed of trust because the SBA's deed of trust explicitly noted that it was subordinate to the bank's prior deed of trust. *Id.* at 157.

In fact, however, no such question was presented to the court, nor decided by it. Rather, the court merely rejected an argument based on Section 6323 by pointing out the obvious, namely that the question there presented involved a government contract claim and deed of trust, not a tax lien. Judge Haynsworth, in a concurrence, underscored that the question here presented was not there decided:

> I cannot say that the Federal Tax Lien Act of 1966 by implication repealed the Insolvency Statute entirely so as to be inapplicable to a contractual claim, or so modified it as to accommodate the priorities which would be recognized if the distribution were being effected by a court in bankruptcy.

*Id.* at 161.

While there is no controlling fourth circuit authority, there are several well-reasoned decisions in point from other jurisdictions which this Court finds persuasive. Notable among these are the sixth circuit's decision in *Kentucky, Dep't of Revenue v. United States*, 383 F.2d 13, 15–16 (6th Cir. 1967), and the district court decisions in *Nesbitt v. United States*, 445 F.Supp. 824, 830 (N.D.Cal.1978), *aff'd mem.*, 622 F.2d 433 (9th Cir.1980), *cert. denied*, 451 U.S. 984, 101 S.Ct. 2315, 68 L.Ed.2d 840 (1981), and *Durham v. United States*, 545 F.Supp. 1093, 1096 (D.N.J.1982), *aff'd mem.*, 720 F.2d 661 (3rd Cir.1983). These decisions uniformly conclude, as does this Court, that Congress did not intend the FTLA to override the Insolvency Statute. This Court is not unmindful that forceful policy arguments can be made in favor of concluding that Section 6323 prevails over the Insolvency Statute.[23] But policy arguments of this sort should be addressed to Congress,[24] not to courts. If the primacy of the Insolvency Statute produces harsh results in certain contexts, it is for Congress, not this Court, to strike the proper balance between such results and the need to protect and assure collection of government claims. The appropriate focus for this Court is to view the question presented strictly as one of statutory construction. So viewed, this Court agrees with *Nesbitt*, *Kentucky v. United States* and *Durham* that the Supreme Court's tests in *Key*, when applied here, lead inescapably to the conclusion that the FTLA does not operate as an implied exception to federal priority in those situations defined in the Insolvency Statute.

For all these reasons, the Court holds that the T–Cas motion for summary judgment must be denied. The government must have an opportunity to prove that the terms of the Statute (insolvency and an act of bankruptcy) are met. If it succeeds, and if there is no showing that the assets are not in the possession of the debtor, Mr. Carter, then the government can rely on the priority which the Insolvency Statute confers on its claim. If the government fails to prove the predicates for the operation of the Insolvency Statute, then Section 6323 would become controlling and the T–Cas lien would prevail.

An appropriate order has been entered.

---

**23.** For a particularly compelling statement of the reasons for permitting the FTLA to override the Insolvency Statute, *see* Judge Haynsworth's concurring opinion in *H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank*, 388 F.2d 156, 161–62 (4th Cir.1967); *see also* Plumb, *The Federal Priority in Insolvency: Proposals for Reform*, Mich.L.Rev. 3 (1971); *supra* note 19.

**24.** And these policy considerations apparently have been addressed to Congress with, as yet, no indication that Congress wishes to change the *status quo*. *See supra* note 19.