688 A.2d 703

In re: Estate of Francis J. ROMANI.

Appeal of: The UNITED STATES of America.

Supreme Court of Pennsylvania.

Argued Sept. 17, 1996.

Decided Jan. 17, 1997.

42

Robert L. Eberhardt, Pittsburgh, Jon Oppenheimer, for U.S.

Lawrence L. Davis, Ebensburg, for Francis Romani.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

FLAHERTY, Chief Justice.

The United States appeals a judgment of the Superior Court which affirmed an order of the Court of Common Pleas of Cambria County granting a petition filed by the Estate of Francis J. Romani to transfer real estate in lieu of execution. We affirm.[1]

Francis J. Romani, who died on January 13, 1992, left an insolvent estate with debts greatly exceeding the value of the sole asset, a piece of real estate valued at $53,001.00. This real estate is burdened by a judgment lien and a federal tax lien. On January 25, 1985, a judgment lien was entered and properly revived against Mr. Romani in favor of Romani Industries, Inc. in the amount of $400,000.[2] Subsequent to the entry of judgment against decedent, the Internal Revenue Service filed notice of a federal tax lien against the decedent

---

1. As the Superior Court noted, although there was no order of final distribution in this case, the practical effect of the court's order was to end the administration of the estate by awarding its sole asset to one of the competing creditors. Therefore, the order is final and appealable. *See Estate of Montgomery*, 367 Pa.Super. 31, 532 A.2d 439 (1987).

2. The original judgment was entered at No. 1985–205 and it was subsequently revived on June 7, 1989. The 1989 judgment was entered at No. 1989–1311 and remains unpaid.

for unpaid taxes and an unpaid civil penalty that, with interest, totaled $489,720.04.

▇ The administrator of the Estate of Francis J. Romani filed a petition in the Court of Common Pleas of Cambria County to transfer the real estate in lieu of execution on behalf of the judgment creditor, Romani Industries, Inc., and the United States opposed the petition. Both parties claimed priority to the property. The lower court granted the administrator's request for relief, holding that the status of Romani Industries, Inc. as a first-in-time judgment lien creditor gave it priority over the government's subsequently filed tax lien. Order dated July 7, 1994, Court of Common Pleas of Cambria County, G.D. No. 11–94–14. The Superior Court affirmed *per curiam. In re Estate of Francis Romani*, 445 Pa.Super. 637, 664 A.2d 1064 (1995). This appeal followed.

The question presented is whether section 6323(a) of the Tax Lien Act,[3] 26 U.S.C. § 6323(a), ("section 6323"), limits the operation of section 3713(a)(1) of the federal insolvency statute, 31 U.S.C. § 3713(a)(1), ("section 3713"), as to tax debts.[4] Romani Industries, Inc. argues that its judgment lien has priority over a tax claim of the United States because, under section 6323, the holder of a properly entered judgment lien has priority over subsequently filed tax lien debts. The United States disagrees, arguing that it has an absolute priority under section 3713 to all proceeds remaining in an insolvent estate, regardless of the time of filing of the tax liens.

Section 6323 provides for a "first in time" priority to the rival lien in federal tax lien matters as follows:

3. Tax Lien Act of 1966, Pub.L.No. 89–719, 80 Stat. 1125, amending 26 U.S.C. § 6323.

4. We addressed this issue in *Estate of Berretta,* 493 Pa. 441, 426 A.2d 1098 (1981) where an evenly divided plurality held that section 6323 impliedly repealed the operation of the relevant insolvency statute, Revised Statutes § 3466, 31 U.S.C. § 191, with respect to tax lien debts of a decedent's insolvent estate. *Berretta* dealt with the relative priority of a "first in time" judgment creditor, a bank, and the United States to certain proceeds remaining from the sale of two parcels of real property included in the insolvent estate of the taxpayer.

**Validity And Priority Against Certain Persons**

(a) *Purchasers, Holders of Security Interests, Mechanic's Lienors and Judgment Lien Creditors.*—The lien imposed by section 6321 [a federal tax lien] shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary. . . . [5]

Tax liens have been authorized by predecessor tax lien statutes. *See,* Act of July 13, 1866, ch. 184, § 9, 14 Stat. 107. It was not until 1966 with the amendment of section 6323, however, that the statute specified priority rules to resolve conflicts between federal tax liens and rival liens.[6]

Section 3713 provides for an absolute priority for federal tax claims in insolvency as follows:

**Priority Of Government Claims**

(a)(1) A claim of the United States shall be paid first when-

(B) the estate of a deceased debtor, in the custody of the executor or administrator, is not enough to pay all the debts of the debtor.

The predecessor to section 3713 was Revised Statute § 3466, 31 U.S.C. § 191, which has been substantially unchanged since 1797. ("section 3466"). *See,* Act of March of March 3, 1797 ch. 20, § 5, 1 Stat. 515.

█ The Court has not decided the question presented. It has cautioned, however, that in considering whether other provisions of the tax lien act operated as implied exceptions to the insolvency statute, "[o]nly the plainest inconsistency would warrant our finding an implied exception to the operation of so clear a command as that of section 3466." *United States v. Emory,* 314 U.S. 423, 433, 62 S.Ct. 317, 322–23, 86 L.Ed. 315,

---

**5.** Section 6321, 26 U.S.C. § 6321, creates a lien in favor of the United States for the amount of tax that anyone has neglected to pay on the property belonging to such person.

**6.** Although section 6323 is undoubtedly a lien statute, it also addresses the priority of federal tax liens against judgment lien creditors. Thus, both statutes address priority of competing liens.

325 (1941);[7] *United States v. Key*, 397 U.S. 322, 90 S.Ct. 1049, 25 L.Ed.2d 340 (1970).[8] In *Key*, the Court said that a reviewing court is to determine whether the statutes are facially inconsistent and, if so, whether the legislative history of the competing statute reflects a congressional intent to modify the effect of the insolvency statute. *Id.* at 324, 90 S.Ct. at 1051, 25 L.Ed.2d at 344 (1970).[9]

The first issue is whether there is a plain inconsistency between the priority of section 6323 and the absolute priority granted the United States by section 3713. Here, the government's relative priority as a creditor differs depending on which section is applied. Section 6323 states that nonfederal claims that have been duly filed prior to the filing of the

7. *Emory* involved a federally guaranteed loan under the National Housing Act ("NHA"). When the debtor became insolvent, the United States was owed $5,988.88 as the guarantor of the NHA loan and claimed priority under section 3466. The nonfederal parties claimed "about $900" for wages. The Court held that Section 3466 and the NHA were not plainly inconsistent because there was no provision in the NHA that expressly relinquished the priority of the United States with respect to claims arising under it. 314 U.S. at 430, 62 S.Ct. at 321, 86 L.Ed. at 323.

8. *Key* involved a bankruptcy reorganization plan that provided for payment of claims of unsecured creditors before full payment of the federal tax claims. The Court found that section 3466 prevailed because no inconsistency existed between that section and three relevant sections of the Bankruptcy Act which required that the United States be paid its taxes under a reorganization plan. The Court concluded that neither the requirement that the United States be paid nor the requirement that the payment be fair and equitable conflicted with the command of section 3466 that the United States be paid first. 397 U.S. at 328–29, 90 S.Ct. at 1053, 25 L.Ed.2d at 346–47.

9. We could utilize a principle of statutory construction to resolve the conflict and conclude that section 6323 limits section 3713. That principle is that a conflict between various statutes is to be avoided and, if possible, the apparent conflicting provisions must be construed together with the more specific provisions prevailing over the general ones. *Busic v. United States*, 446 U.S. 398, 100 S.Ct. 1747, 64 L.Ed.2d 381 (1980); *Morton v. Mancari*, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). Here, section 6323 is the more specific provision because it applies only to federal tax liens, whereas section 3713 is the more general provision in that it applies to any unpaid claim of the government against an insolvent debtor. Therefore, applying this principle of statutory construction, the general provisions of section 3713 are limited by the specific provisions of section 6323.

federal tax claim are valid as against federal tax claims. On the other hand, section 3713 gives an absolute priority to the United States against other creditors of insolvent debtors for tax liens regardless of when the tax lien was filed. We are constrained to find a facial inconsistency because, with respect to tax liens, section 6323 provides for a "first in time" priority while section 3713 gives absolute priority to the United States.[10]

Since we have determined that the statutes are plainly inconsistent, we next address whether the Tax Lien Act of 1966 evidences a congressional intent that federal priorities in insolvency be limited in the tax area. We look to *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) as the most recent expression of the Court on the policy considerations that underlie the question of whether the government in the tax arena is to be treated as an ordinary creditor or as a creditor with super-priority. In *Kimbell Foods*, the Court held that Congress intended that the "first in time is first in right" principle of section 6323 applied in federal government lending cases involving solvent debtors.[11] The Court ruled that government lending agencies,

**10.** The United States argues, and other courts have held, that no plain inconsistency exists between the statutes. *See, e.g., Carter v. Carter and T–Cas of America, Inc.*, 681 F.Supp. 323, 326 (E.D.Va.1988) where the court said that because Congress was silent on the matter, the court would infer that Congress intended the Tax Lien Act of 1966 to supplement section 3713 and not to displace it so that in certain cases of taxpayer insolvency, section 3713 governs, and in all other cases, section 6323 controls.

We disagree with this conclusion and find support in other federal cases. *See* note 17, *infra.*

**11.** In *Kimbell Foods*, O.K. Super Markets, ("O.K.") borrowed, during 1968, $27,000 from Kimbell Foods. The parties executed security agreements containing a standard "dragnet" clause that provided that the collateral would secure future advances from Kimbell Foods. Kimbell Foods properly perfected its security interest.

In February, 1969, O.K. borrowed $300,000 from Republic National Bank, ("bank") with the bank accepting as security the same property specified in Kimbell Foods' 1968 agreements. The bank perfected its security interest. The Small Business Administration ("SBA") guaranteed 90% of this loan under the Small Business Act, which does not, in this situation, specify priority rules to govern the SBA's security inter-

such as the Small Business Administration, are to be afforded the same priority as private lenders under non-discriminatory state laws, absent a congressional directive to the contrary. 440 U.S. at 740, 99 S.Ct. at 1465, 59 L.Ed.2d at 731.

The Court articulated two reasons for its holding. First, Congress, by the passage of the Tax Lien Act of 1966, expressed its disapproval of "unrestricted federal priority" in tax matters. 440 U.S. at 738, 99 S.Ct. at 1463, 59 L.Ed.2d at 730. *See*, 26 U.S.C. §§ 6323(b), (c), (d), and (e). The Court explained that, prior to the 1966 law, it had formulated the "choate lien" test which modified the "first in time is first in right" idea by requiring that the nonfederal lien be sufficiently specific and perfected to overcome the priority of the United States in insolvency cases. 440 U.S. at 720, 99 S.Ct. at 1454, 59 L.Ed.2d at 719.[12] The practical effect of the choateness test, the Court said, was that rival liens were defeated because

ests. O.K. used the bank loan to satisfy the remainder of the 1968 obligation to Kimbell Foods and to discharge a debt for inventory purchased from Kimbell Foods on open account. In late 1970, the bank assigned its security interest to the SBA. O.K. defaulted on the SBA-guaranteed loan shortly before mid-January, 1971.

Kimbell Foods continued to sell to O.K. on open account until the debt was over $18,258.57 on January 15, 1971, when Kimbell Foods sued O.K. to recover on its inventory debt. The SBA recorded the bank's assignment on January 21, 1971. The United States honored its guarantee on the defaulted loan and paid the bank 90% of the outstanding debt on February 3, 1971. That same day, O.K., with the approval of its creditors, sold its equipment and inventory and placed the proceeds in escrow pending the resolution of the competing claims to the funds.

A year later, the state court entered judgment against O.K. and awarded Kimbell Foods $24,445.37, which represented the inventory debt and other items. Kimbell Foods then brought suit in early 1972 in federal court to foreclose on its lien, claiming he had a security interest in the escrow fund that was superior to the SBA's interest.

12. The Court also stated that it applied the choateness doctrine in the solvency context to give federal tax liens special priority. *See United States v. Security Trust & Savings Bank, supra,* 340 U.S. at 51, 71 S.Ct. at 111, 95 L.Ed. at 53. For a discussion of the history of the choate lien test, *see* Kennedy, *The Relative Priority of the Federal Government: The Pernicious Career of the Inchoate and General Lien,* 63 Yale L.J. 905 (1954). *Kimbell Foods,* 440 U.S. at 721 n. 8, 99 S.Ct. at 1454 n. 8, 59 L.Ed.2d at 719 n. 8.

they failed to pass its strict test. *Id.*[13] The Court concluded that the Tax Law of 1966 reflected congressional intent to disapprove unrestricted federal priority in tax matters[14] and to displace the "choateness" doctrine. 440 U.S. at 720 n. 6, 99 S.Ct. at 1454 n. 6, 59 L.Ed.2d at 719 n. 6.[15]

Second, the Court explained that restrictions on federal tax lien priority are necessary to facilitate commercial stability and to avoid the frustration of expectations of superior lien holders. The Court recognized that federal lien priority undercuts the reliability of the notice filing system, which plays a crucial role in commercial dealings. 440 U.S. at 739 n. 42, 99 S.Ct. at 1464 n. 42, 59 L.Ed.2d at 731 n. 42. Prior creditors

13. We observe that the Court has not yet held that a perfected and specific lien is excepted from the operation of section 3466 or section 3713. Rather, the Court has raised but avoided the issue in cases before 1966 by holding that the asserted lien was not sufficiently perfected and specific to qualify under any possible exception. *See, United States v. Gilbert Associates, Inc.,* 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953); *Illinois v. Campbell,* 329 U.S. 362, 67 S.Ct. 340, 91 L.Ed. 348 (1946); *United States v. Waddill, Holland & Flinn, Inc.,* 323 U.S. 353, 65 S.Ct. 304, 89 L.Ed. 294 (1945); *United States v. Texas,* 314 U.S. 480, 62 S.Ct. 350, 86 L.Ed. 356 (1941); and, *New York v. Maclay,* 288 U.S. 290, 53 S.Ct. 323, 77 L.Ed. 754 (1933).

14. The Court further explained that:
... Of particular relevance here, the Act added mechanic's liens to the list of private interests already protected against unrecorded tax liens. 26 U.S.C. § 6323(a). Holders of consensual security interests also receive priority over unrecorded tax liens. Ibid. Moreover, the Act gives priority to many types of nonfederal liens even when the Government had filed notice of the tax lien. § 6323(b). Included in this group are repairman's liens in personal property, S 6323(b)(5), ... and in limited situations, liens securing advances. § 6323(c).
440 U.S. at 738 n. 41, 99 S.Ct. at 1464 n. 41, 59 L.Ed.2d at 730 n. 41.

15. We also note that the legislative history of the Tax Lien Act of 1966 indicates a Congressional intent that priority to the "first in time" lien exists whether a lien was "choate" or not. *See* Senate Finance Committee's Report 1708 which stated:
[I]t is intended that, under the bill, the various types of interests defined in this provision are to have a priority over a nonfiled Federal tax lien if they come within the definitions of these terms [e. g., "purchaser," "judgment lien creditor," etc.] ... whether or not in all other regards they are definite and complete at the time notice of the tax lien is filed.
U.S.Code Congressional and Administrative News, 89th Congress, 2d Sess., v. 3, 1966, 3722, 3724–25.

either have no trustworthy means of discovering the undisclosed security interest or, if they are aware of the federal lien, have to adjust their lending arrangements to protect against the stringent choateness requirements. *Id.*[16] Further, the Court said, considerable uncertainty would also result from the choateness approach because the development of priority rules on a case-by-case basis, depending on the types of competing liens involved, leaves creditors without a definite body of law they require in structuring sound business transactions. *Id.* For these reasons, the Court concluded, Congress intended that restrictions on federal tax lien priority exist.

Although *Kimbell Foods* involves the priority to be accorded a federal consensual loan where the debtor is solvent, and the case at bar involves the question of the priority to be accorded a federal tax lien where the debtor is insolvent, we believe that *Kimbell Foods* and other cases [17] provide

16. Judge Haynsworth observed that the Tax Lien Act of 1966 would be essentially meaningless if the insolvency statute always prevailed. *See,* the concurring opinion of Judge Haynsworth in *H.B. Agsten & Sons, Inc. v. Huntington Trust & Savings Bank,* 388 F.2d 156, 161 (4th Cir.1967), *cert. den.* 390 U.S. 1025, 88 S.Ct. 1413, 20 L.Ed.2d 282 (1968):

 ... The question of priorities [between section 6323 and section 3713] is wholly or largely academic, unless the debtor is insolvent, and the clearly stated purpose of the Federal Tax Lien Act of 1966 was to regulate the priority of federal tax claims when competing for payment out of the assets of an insolvent taxpayer with secured claims which would enjoy priority under state law.

17. *See United States v. Randall,* 401 U.S. 513, 91 S.Ct. 991, 28 L.Ed.2d 273 (1971) (specific priorities of the Bankruptcy Act override the general priority of the United States under section 3466). *See also, United States v. S.K.A. Associates, Inc.,* 600 F.2d 513 (5th Cir.1979) (SBA lien in an insolvency held not entitled to priority under section 3466); *United States v. Burlington Industries,* 600 F.2d 517 (5th Cir. 1979) (contest between federal agency's security interest and a warehouseman to be decided under nondiscriminatory state law); *City of Vermillion, S.D. v. Stan Houston Equipment Co.,* 341 F.Supp. 707, 713 (D.S.D.1972).

 Court decisions announced before the Tax Lien Act of 1966 support an opposite result. While we do not disregard these cases, we believe that Congressional enactments in the federal tax lien area place the older cases in a less persuasive perspective. *See United States v. Vermont,* 377 U.S. 351, 84 S.Ct. 1267, 12 L.Ed.2d 370 (1964) (in

guidance as to how the federal courts would resolve the case at bar.[18] Here, there is a plain inconsistency between the competing statutes. Also, the Tax Lien Act of 1966 evidences a congressional intent that federal priorities be limited in the tax area, regardless of whether the debtor is insolvent. Further, to hold otherwise would frustrate the congressional purpose by defeating in insolvency the very interests that were specifically protected against federal priority in non-insolvency situations. Finally, the grant of absolute federal priority in insolvency cases, as in solvency cases, would be destructive of commercial stability and would frustrate legitimate commercial expectations. We hold, therefore, that section 6323 limits the operation of section 3713 as to tax debts.[19]

Order affirmed.

CASTILLE and NIGRO, JJ., concur in the result.

dictum: section 3466 applies to all an insolvent's debts to the government, whether or not arising from taxes); *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1954) (in dictum: section 3466 imposes an absolute priority in insolvency, but not applied because the record did not establish that the debtor was insolvent); *United States v. Gilbert Associates, Inc.*, 345 U.S. 361, 73 S.Ct. 701, 97 L.Ed. 1071 (1953) (United States tax lien held to have priority under section 3466); *United States v. Security Trust and Savings Bank*, 340 U.S. 47, 71 S.Ct. 111, 95 L.Ed. 53 (1950) (in dictum: section 3466 permits no exception and applies to all debts of the United States whether or not arising from taxes whether or not secured by a lien).

We also are not persuaded by the reasoning of other federal courts that have held that section 3713 provides for absolute priority in tax lien cases for, we believe, those court did not adequately address the policy considerations weighed in *Kimbell Foods. See, e.g., Jonathan's Landing, Inc. v. Townsend*, 960 F.2d 1538 (11th Cir.1992); *Westmoreland v. Westmoreland, Executrix, and the United States*, 716 F.Supp. 217 (D.S.C.1988); *Carter v. Carter and T–Cas of America, Inc.*, 681 F.Supp. 323 (E.D.Va.1988) and *Nesbitt v. U.S.*, 445 F.Supp. 824 (N.D.Cal.1978).

18. Since we are construing federal statutes, federal law controls. A state cannot impair the standing of federal liens without the consent of Congress. *United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520, 525 (1954).

19. Finally, the United States argues that the lien of Romani Industries, Inc. was not sufficiently specific and perfected to displace the first priority of the United States under section 3713. Since this issue was not addressed by the lower courts, it is inappropriate for us to consider it at this time.